**15-374-cv**
*Bernstein v. Bernstein Litowitz Berger & Grossmann LLP, et al.*

# In the

# United States Court of Appeals

## For the Second Circuit

————

AUGUST TERM, 2015

SUBMITTED: OCTOBER 23, 2015
DECIDED: FEBRUARY 24, 2016

No. 15-0374-cv

BRUCE BERNSTEIN,
*Plaintiff,*

*v.*

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP, MAX BERGER,
STEVEN SINGER, SALVATORE GRAZIANO, EDWARD GROSSMANN AND
GERALD SILK,
*Defendants-Appellants.*[*]

————

Appeal from the United States District Court
for the Southern District of New York.
No. 14 Civ. 6867 (VEC) – Valerie E. Caproni, *Judge.*

————

Before: KEARSE, WALKER, and CABRANES, *Circuit Judges.*

————

---

[*] The Clerk of Court is respectfully directed to amend the caption to conform to the above.

Attorney Bruce Bernstein sued his former law firm, Bernstein Litowitz Berger & Grossmann LLP ("BLB&G"), and five of its partners, alleging that he had been forced to resign after blowing the whistle on what he considered to be the firm's unethical litigation conduct. The firm argued that the relevant facts were "confidential client information" that could not be disclosed by Bernstein in a complaint raising claims of, *inter alia*, retaliatory breach of contract. Bernstein sought and obtained permission from the United States District Court for the Southern District of New York (Kevin P. Castel, *Judge*) to file a complaint under seal, with the sealing to automatically expire fourteen days after service of process on defendants, unless extended by the court. Thirteen days after the complaint was filed, the parties settled the suit on confidential terms. The parties then sought an order directing the clerk of court to close the file while leaving it permanently sealed.

The United States District Court for the Southern District of New York (Valerie E. Caproni, *Judge*) denied the parties' request. The district court concluded that the complaint is a judicial document subject to a presumption of public access under the First Amendment and the common law. The district court also held that keeping the complaint secret was not necessary to protect "confidential client communications." Finally, applying the balancing test for the common-law right of access, the court found

that the weak private interests at stake did not rebut the presumption of access, which is supported by substantial public interests. We agree with the district court and AFFIRM.

_____

> Gregory P. Joseph, Pamela Jarvis, and Courtney A. Solomon, *on the brief*, Joseph Hage Aaronson LLC, New York, NY, *for Defendants-Appellants.*

_____

JOHN M. WALKER, JR., *Circuit Judge*:

Attorney Bruce Bernstein sued his former law firm, Bernstein Litowitz Berger & Grossmann LLP ("BLB&G"), and five of its partners, alleging that he had been forced to resign after blowing the whistle on what he considered to be the firm's unethical litigation conduct. The firm argued that the relevant facts were "confidential client information" that could not be disclosed by Bernstein in a complaint raising claims of, *inter alia*, retaliatory breach of contract. Bernstein sought and obtained permission from the United States District Court for the Southern District of New York (Kevin P. Castel, *Judge*) to file a complaint under seal, with the sealing to automatically expire fourteen days after service of process on defendants, unless extended by the court. Thirteen days after the complaint was filed, the parties settled the suit on confidential

terms. The parties then sought an order directing the clerk of court to close the file while leaving it permanently sealed.

The United States District Court for the Southern District of New York (Valerie E. Caproni, *Judge*) denied the parties' request. The court concluded that the complaint is a judicial document subject to a presumption of public access under the First Amendment and the common law. The district court also held that keeping the complaint secret was not necessary to protect "confidential client communications." Finally, applying the balancing test for the common-law right of access, the court found that the weak private interests at stake did not rebut the presumption of access, which is supported by substantial public interests. We agree with the district court and AFFIRM.

**BACKGROUND**

We recite the facts alleged in the complaint that are necessary to understand the substantial public interest in the complaint's disclosure, as the complaint in a case discloses the nature of the proceeding. We emphasize, however, that at this point in the proceeding the facts alleged are exactly that—simply allegations, the truth of which has not been proven.

Bernstein became of counsel with BLB&G in 2008. At the firm, he worked on *In re Satyam Computer Services, Ltd., Securities Litigation*, a class action which arose from a "massive financial

scandal involving . . . Satyam Computer Services, Ltd. (Satyam), one of India's largest information technology and outsourcing companies." 609 F. Supp. 2d 1375, 1375 (J.P.M.L. 2009). Suits brought by various investors against Satyam and others were consolidated in the Southern District of New York by the Judicial Panel on Multidistrict Litigation. *Id.* In May 2009, the Mississippi Public Employees' Retirement System ("MPERS") was appointed as one of four lead plaintiffs in the case. *In re Satyam Comput. Servs., Ltd., Sec. Litig.*, 1:09-md-02027-BSJ [Doc. No. 8] (May 12, 2009). The Office of the Mississippi Attorney General ("AG's Office") was inside counsel for MPERS. BLB&G was outside counsel.

In September 2010, BLB&G partner Steven Singer informed Bernstein that a solo practitioner based in Jackson, Mississippi, Vaterria Martin, would act as "local counsel" and "occasionally check on the status of the case for MPERS, even though BLB&G was already providing this information directly" to the AG's Office. In December 2010, the lead plaintiffs in the Satyam class action reached an agreement in principle to settle with Satyam for $125 million. On February 16, 2011, Satyam and the lead plaintiffs executed a stipulation setting forth the terms of the agreement.[1]

---

[1] On March 8, 2011, the lead plaintiffs reached an agreement in principle to settle with Satyam's codefendants—various PricewaterhouseCoopers entities that were Satyam's auditors—for $25.5

On March 1, 2011—after the agreement in principle with Satyam had been reached and the stipulation had been executed— another BLB&G partner, Max Berger, "assigned two unnecessary legal research projects" to Martin.  Bernstein protested the assignment, but his concerns were dismissed, with Singer saying, "Do you ever want us to work with Mississippi again?"  Martin ultimately produced an eighteen-page memorandum on April 26, 2011, several weeks after the case was settled in principle.  Singer and Berger agreed with Bernstein that the memorandum "addressed the wrong pleading," "contained no meaningful analysis," and was "ridiculous."  Martin reported a total of 207 hours' work on the case, primarily spent producing the useless memorandum.

After the settlement became final, Bernstein learned from BLB&G's comptroller that the firm had paid Martin $112,500 from the proceeds of the Satyam class settlement.  BLB&G did not disclose the payment to the court in its August 1, 2011 fee petition.[2]

---

million.  The district court entered amended preliminary settlement-approval orders on March 21, 2011 and May 12, 2011.  *In re Satyam Comput. Servs., Ltd., Sec. Litig.*, 1:09-md-02027-BSJ [Docs. No. 259 & 319].  The final judgment and order as to Satyam issued on September 13, 2011.  *Id*. [Doc. No. 363].

[2] Formerly, the local civil rules of the Southern District of New York required that all fee applicants in derivative and class actions disclose to the court "any fee sharing agreements with anyone."  By a rule amendment effective July 11, 2011—three weeks before BLB&G submitted its fee petition—the automatic-disclosure provision was repealed as to

Concerned with the ethical and legal implications of the arrangement, Bernstein inquired further. He learned that Martin had been admitted to the bar only five years before *Satyam* was filed, and was married to Deshun T. Martin, a special assistant attorney general in the AG's Office.

Bernstein allegedly raised his ethical concerns again in several contentious meetings with partners. The firm's leadership—Berger, Salvatore Graziano, and Edward Grossmann—dismissed Bernstein's misgivings. Graziano and Berger informed Bernstein that there was "local pressure on the Mississippi AG" to use "local firms," told him "you need to drop this," and made a veiled threat to "blackball" Bernstein if he became "a whistleblower."

In December 2011, Bernstein reported his concerns to the U.S. Attorney's Office for the Southern District of New York. Soon afterward, Bernstein became concerned about BLB&G's conduct in another class action, in which the firm allocated work to Mississippi firms that lacked relevant experience.

---

class actions. *See* S.D.N.Y. Local Civil Rule 23.1 (repealed effective July 11, 2011); S.D.N.Y. Local Civil Rule 23.1.1. According to the Joint Committee on Local Rules note, the committee recommended that the automatic-disclosure rule as applied to class actions be deleted "because it is redundant [with] . . . Fed. R. Civ. P. 23(h)." Federal Rule 23(h), in turn, does not mandate automatic disclosure of all fee-sharing arrangements in class actions.

Bernstein claims that the issue took its toll on his relationship with the firm's leadership. In October 2012, after realizing that his termination was inevitable, he resigned from the firm. Bernstein alleges that after his departure, BLB&G interfered with his relationship with a lead plaintiff in one case, and BLB&G partners made various threats toward him before attempting to "buy [his] silence" by offering him compensation from a future settlement in an unrelated case on the condition that he keep the Mississippi-counsel arrangement secret. Bernstein declined.

At two mediation sessions held before Bernstein filed suit, BLB&G expressed its belief that Bernstein's claims were based on facts learned in the course of representation of a client and thus could not be disclosed under the New York Rules of Professional Conduct. Bernstein, by contrast, maintained that the facts underlying his claims were "neither privileged nor confidential" and that he was free to disclose them in court filings.

Notwithstanding Bernstein's position that he was free to disclose the facts at issue, Bernstein filed a motion with the district court prior to filing the complaint requesting—"out of an abundance of caution"—the entry of "an order sealing all materials filed in this case until the Court resolves these issues of confidentiality."

Judge Kevin Castel, sitting in Part I, granted the motion on July 24, 2014, before the suit was filed. Noting that "it is doubtful

that sealing is appropriate," the district court nevertheless out of an "abundance of caution" ordered that "[t]he action may be filed under seal and the sealing shall *expire* within 14 days of service of process on defendants unless extended by order of the judge to whom the case is assigned."

On August 22, 2014, Bernstein filed the complaint under seal against BLB&G and five individual BLB&G partners: Berger, Singer, Graziano, Grossmann, and Gerald Silk.  He alleged, in substance, that defendants (1) engaged in a kickback scheme in violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1962(c), 1964(c), and (2) breached their contract with Bernstein in retaliation for reporting an ethical breach.

After filing the sealed complaint, the parties returned to the negotiating table.  As Judge Caproni, to whom the case had been assigned, wrote: "Armed now with the ticking time bomb provided by the Court's order, Bernstein was able to accomplish what he could not without the assistance of a filing in this Court: he negotiated a mutually acceptable settlement."  The settlement agreement "includes a provision that voids the settlement if [the] action is unsealed or otherwise becomes public."

On September 4, 2014—one day short of the automatic unsealing provided for by the court's July 24 order—Bernstein filed a notice of dismissal pursuant to the settlement.  The following day,

the parties jointly moved for an order directing the clerk of court "to close the file without ordering the file unsealed." The parties apparently believed that obtaining a stipulated dismissal before the expiration of the sealing order would "ensure that the [c]omplaint would never see the light of day."

On January 12, 2015, following a hearing and multiple rounds of briefing, the district court issued its opinion and order. After determining that it had jurisdiction, the district court held that the complaint is a judicial document subject to a presumption of public access under both the First Amendment and the common law. Next, the district court held that the complaint does not contain confidential client communications or information and therefore public access to the complaint would not plausibly implicate values "higher" than First Amendment values. Finally, the district court held that even if the First Amendment presumption did not apply, the common-law presumption of access to judicial documents would require the complaint to be public because the "considerable" public interest in disclosure outweighs the "weak" private interests favoring secrecy. accordingly, the district court denied the parties' request to continue the sealing order and directed the clerk of court to unseal the case thirty days from the issuance of its order, with the thirty-day period to be tolled during the pendency of any appeal.

Defendants timely appealed. Bernstein has not filed a brief. Although he continues to contest defendants' claim that the complaint contains "confidential client information," he supports BLB&G's position that the case should remain sealed so as not to risk unwinding the settlement.

**DISCUSSION**

The sole issue is whether the district court correctly denied the parties' request to continue the sealing order. In reviewing a district court's order to seal or unseal, we examine the court's factual findings for clear error, its legal determinations de novo, and its ultimate decision to seal or unseal for abuse of discretion. *See United States v. Doe*, 63 F.3d 121, 125 (2d Cir. 1995); *United States v. Amodeo*, 44 F.3d 141, 146 (2d Cir. 1995) (*Amodeo I*).

### I.      Pleadings as judicial records.

We first consider whether a complaint is a judicial document subject to a presumption of access and easily conclude that a complaint is such a document. A "judicial document" or "judicial record" is a filed item that is "relevant to the performance of the judicial function and useful in the judicial process." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006) (internal quotation marks omitted). Such documents are presumptively public so that the federal courts "have a measure of accountability" and so that the public may "have confidence in the administration of

justice." *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995) (*Amodeo II*). In determining whether a document is a judicial record, we evaluate the "relevance of the document's specific contents to the nature of the proceeding" and the degree to which "access to the [document] would materially assist the public in understanding the issues before the . . . court, and in evaluating the fairness and integrity of the court's proceedings." *Newsday LLC v. Cty. of Nassau*, 730 F.3d 156, 166-67 (2d Cir. 2013). [3]

Pleadings plainly meet the *Newsday* test for reasons that are readily apparent. "A complaint, which initiates judicial proceedings, is the cornerstone of every case, the very architecture of the lawsuit, and access to the complaint is almost always necessary if the public is to understand a court's decision." *Fed. Trade Comm'n v. AbbVie Prods. LLC,* 713 F.3d 54, 62 (11th Cir. 2013). Moreover, in commencing an action and thus invoking the court's jurisdiction, the parties' substantive legal rights and duties may be affected. For example, "a large number of lawsuits . . . are disposed of at the motion-to-dismiss stage, where a court determines solely on the

[3] While "the mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access," *Lugosch*, 435 F.3d at 119 (internal quotation marks omitted), a document is judicial not only if the judge actually relied upon it, but also if "the judge *should* have considered or relied upon [it], but did not." *Id*. at 123 (internal quotation marks omitted). Such documents "are just as deserving of disclosure as those that actually entered into the judge's decision." *Id.* (internal quotation marks omitted).

basis of the complaint whether the plaintiff has made sufficient factual allegations to state a claim." *Id.* The filing of a complaint triggers other legal consequences as well. *E.g.*, *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998) (obligation to preserve evidence); *Mattel, Inc. v. Louis Marx & Co.*, 353 F.2d 421, 424 (2d Cir. 1965) (when duplicative actions are commenced, the first-filed complaint normally determines the district of adjudication). For these reasons, the "modern trend in federal cases" is to classify "pleadings in civil litigation (other than discovery motions and accompanying exhibits)" as judicial records. *IDT Corp. v. eBay*, 709 F.3d 1220, 1223 (8th Cir. 2013); *accord AbbVie*, 713 F.3d at 62–63 (collecting cases); *United States v. Martin*, 746 F.2d 964, 968 (3d Cir. 1984).

The fact that a suit is ultimately settled without a judgment on the merits does not impair the "judicial record" status of pleadings. It is true that settlement of a case precludes the judicial determination of the pleadings' veracity and legal sufficiency. But attorneys and others submitting pleadings are under an obligation to ensure, when submitting pleadings, that "the factual contentions [made] have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3). In any event, the fact of filing a complaint, whatever its veracity, is a

significant matter of record.  Even in the settlement context, the inspection of pleadings allows "the public [to] discern the prevalence of certain types of cases, the nature of the parties to particular kinds of actions, information about the settlement rates in different areas of law, and the types of materials that are likely to be sealed."  *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 96 (2d Cir. 2004).  Thus, pleadings are considered judicial records "even when the case is pending before judgment or resolved by settlement."  *IDT Corp.*, 709 F.3d at 1223 (citations omitted); *accord Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 180 n.* (4th Cir. 1988); Laurie Doré, *Secrecy by Consent: The Use and Limits of Confidentiality in the Pursuit of Settlement*, 74 NOTRE DAME L. REV. 283, 378 (1999).

We therefore hold that pleadings—even in settled cases—are judicial records subject to a presumption of public access.

## II. Presumptive right of access to the complaint.

A "[f]inding that a document is a 'judicial document' triggers a presumption of public access, and requires a court to make specific, rigorous findings before sealing the document or otherwise denying public access."  *Newsday*, 730 F.3d at 167 n.15.  The "presumption of access" to judicial records is secured by two independent sources: the First Amendment and the common law.  *Lugosch*, 435 F.3d at 121.  The analysis with respect to each is somewhat different.

**A. The First Amendment presumptive right of access.**

Defendants argue that the First Amendment presumption does not apply here. We disagree.

"We have articulated two different approaches for determining whether 'the public and the press should receive First Amendment protection in their attempts to access certain judicial documents.'" *Id.* at 120 (internal quotation marks omitted). The first approach considers "experience and logic": that is, "whether the documents have historically been open to the press and general public and whether public access plays a significant positive role in the functioning of the particular process in question." *Id*. (internal quotation marks omitted). "The second approach considers the extent to which the judicial documents are derived from or are a necessary corollary of the capacity to attend the relevant proceedings." *Id*. (alterations and internal quotation marks omitted).

A complaint—especially in a case that is ultimately settled—is best evaluated under the "experience and logic" approach, because the alternative approach is relevant only after court proceedings have commenced. Experience and logic both support access here. Complaints have historically been publicly accessible by default, even when they contain arguably sensitive information. *Cf. Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189-90 (2d Cir. 2008). Defendants acknowledge that since the adoption of the

Federal Rules of Civil Procedure in 1938, federal lawsuits have been commenced by the filing of the complaint. Fed. R. Civ. P. 3. But they argue that since "many federal courts did not require complaints to be filed unless and until judicial intervention was sought" before 1938, there is no strong historical tradition of public access to complaints. This argument is unpersuasive. It ignores the history of the last eight decades under the Federal Rules. Moreover, the fact that pre-1938 law may have allowed actions to commence without the filing of a complaint says nothing about whether the public at that time had access to documents that *were* permitted or required to be filed.

Logical considerations also support a presumption of public access. Public access to complaints allows the public to understand the activity of the federal courts, enhances the court system's accountability and legitimacy, and informs the public of matters of public concern. Conversely, a sealed complaint leaves the public unaware that a claim has been leveled and that state power has been invoked—and public resources spent—in an effort to resolve the dispute. These considerations indicate that public access to the complaint and other pleadings has a "significant positive role," *Lugosch*, 435 F.3d at 120 (internal quotation marks omitted), in the functioning of the judicial process.

**B.  The common-law presumption of access.**

The district court concluded that in addition to the First Amendment presumption of access, the common-law presumption of access attached.  Defendants contend that the common-law presumption "lacks weight here" and that unsealing the complaint constituted an abuse of discretion.

The courts have long recognized the "general right to inspect and copy public records and documents, including judicial records and documents."  *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978) (footnote omitted).  This right "is said to predate the Constitution."  *Amodeo I*, 44 F.3d at 145.

The "right to inspect and copy judicial records is not absolute," however, and a court may exercise its "supervisory power over its own records and files" to deny access "where court files might have become a vehicle for improper purposes."  *Nixon*, 435 U.S. at 598 (internal quotation marks omitted).  "Once the court has determined that the documents are judicial documents and that therefore a common law presumption of access attaches, it must determine the weight of that presumption."  *Lugosch*, 435 F.3d at 119.

The weight of the presumption is a function of (1) "the role of the material at issue in the exercise of Article III judicial power" and (2) "the resultant value of such information to those monitoring the federal courts," balanced against "competing considerations" such

as "the privacy interests of those resisting disclosure." *Lugosch*, 435 F.3d at 119-20 (internal quotation marks omitted); *see also Amodeo II*, 71 F.3d at 1049-51. We take each factor in turn.

Where a document's "role in the performance of Article III duties" is "negligible . . . , the weight of the presumption is low." *Amodeo II*, 71 F.3d at 1050. Conversely, where documents "directly affect an adjudication," *id.* at 1049, or are used to determine litigants' substantive legal rights, the presumption of access is at its zenith, *Lugosch*, 435 F.3d at 121, and thus can be overcome only by "extraordinary circumstances," *Amodeo II*, 71 F.3d at 1048 (internal quotation marks omitted). The locus of the inquiry is, in essence, whether the document "is presented to the court to invoke its powers or affect its decisions." *Id.* at 1050.

Applying this standard, we have determined that a report submitted to a court in connection with a summary-judgment motion is entitled to a strong presumption of access. *Joy v. North*, 692 F.2d 880, 894 (2d Cir. 1982). Since such a document "is the basis for the adjudication, only the most compelling reasons can justify" sealing. *Id.* By contrast, documents "such as those passed between the parties in discovery" often play "no role in the performance of

Article III functions" and so the presumption of access to these records is low. *Amodeo II*, 71 F.3d at 1050.[4]

Under the two-factor *Lugosch* approach, we easily determine that the weight of the presumption here is strong. Pleadings, such as the complaint here, are highly relevant to the exercise of Article III judicial power. Of all the records that may come before a judge, a complaint is among the most likely to affect judicial proceedings. It is the complaint that invokes the powers of the court, states the causes of action, and prays for relief. We have already discussed the second basis supporting the weight of the presumption: the utility of the complaint to those who monitor the work of the federal courts.

We now move to the crux of the weight-of-the-presumption analysis: balancing the value of public disclosure and "countervailing factors" such as "(i) the danger of impairing law enforcement or judicial efficiency and (ii) the privacy interests of those resisting disclosure." *Id.*; *see also Amodeo I*, 44 F.3d at 146–47. In striking this balance, we agree with the district court's careful opinion that the value of public disclosure is substantial and the privacy interests at stake are minimal.

---

[4] *Cf. United States v. Glens Falls Newspapers, Inc.*, 160 F.3d 853, 857 (2d Cir. 1998) (settlement negotiations and draft agreements "do not carry a presumption of public access" because "[t]he judge cannot act upon these discussions or documents until they are final, and the judge may not be privy to all of them").

As the district court noted, the complaint alleges that defendants, as counsel for a state employees' pension fund that was a lead plaintiff in a major securities class action, "regularly engage in a kickback scheme with the Mississippi Attorney General's Office, a public entity whose constituents might otherwise be in the dark about the arrangement." Whether true or not, this allegation would naturally be of legitimate interest to the public (especially those who contribute to and receive payments from MPERS) and to federal courts in the future (e.g., those considering whether to name BLB&G as lead class counsel or find MPERS to be an adequate class representative in future class actions). Moreover, the complaint also did not come "within [the] court's purview solely to [e]nsure [its] irrelevance." *Lugosch*, 435 F.3d at 119 (internal quotation marks omitted). Although the speedy settlement of the claim meant that the court did not adjudicate the merits of the case, the district courts routinely engage in adjudicatory duties even in connection with complaints that are dismissed or settled.

In the circumstances here presented, the interests favoring secrecy, meanwhile, are weak. This is not a case in which disclosure would reveal details of an ongoing investigation, pose a risk to witnesses, endanger national security, or reveal trade secrets. *See Amodeo I*, 44 F.3d at 147. Moreover, as we will show, the case does not implicate the duty to protect either privileged attorney-client

material or confidential client information.  Once these rationales fall away, only insubstantial arguments remain.

On appeal, defendants spend much of their brief arguing that the complaint is unreliable and contesting the truth of the allegations in the complaint.  They argue that unsealing the complaint "assumes the truth" of the allegations within it.  But unsealing does no such thing.  As the district court noted:

> Complaints can—and frequently do—contain allegations that range from exaggerated to wholly fabricated.  That is the nature of judicial proceedings—not everything alleged by one party can or should be taken as ground truth.  Still, the pleadings can and do properly frame the proceeding and provide outer boundaries on the claims advanced . . . and the redress sought.

(Internal citation omitted).  Following defendants' logic to its conclusion, moreover, would create an untenable result—the sealing of all complaints in actions in which the plaintiff does not prevail, and all indictments in a criminal prosecution in which the defendant is acquitted.

In sum, the district court engaged in a thoughtful and extended analysis of the competing interests at stake.  The district court concluded that (1) the weight of the presumption of public

access accorded to the complaint was high because (a) the document was highly relevant to the exercise of Article III judicial power and (b) the public interest in disclosure was substantial, while the private interests in secrecy are weak; and (2) BLB&G did not come forth with a sufficient rationale to rebut this strong presumption of access. These conclusions were amply supported, and there is no basis to disturb them.

### III.  Sealing of the complaint is not justified in order to protect "confidential client information."

On appeal, BLB&G renews its argument that a need to protect "confidential client information" justifies or requires continued sealing of the complaint.  We reject this claim.

After Bernstein left BLB&G, George W. Neville—a special assistant attorney general in the civil litigation division of the AG's Office—exchanged several letters with Bernstein's attorney.  In these letters, Neville ordered Bernstein to keep the existence of the alleged kickback scheme private, writing:  "As counsel for the State of Mississippi . . . and on behalf of the State of Mississippi and its agency MPERS, I am directing [Bernstein] not to disclose any confidential information he learned as counsel to Mississippi and its agency MPERS."

Relying in part on these letters, defendants argued to the district court that all or virtually all of the facts alleged in the

complaint are "confidential" under the New York Rules of Professional Conduct and thus permanent sealing is required.[5] The district court rejected this claim. On appeal, defendants renew this confidentiality argument. We reach the same conclusion as did the district court.

As a threshold matter, we note that defendants rely in large part on the conclusions of their legal-ethics expert made in a declaration filed in the district court. We do not consider arguments based on this declaration because of our longstanding rule that expert testimony on issues of domestic law is not to be considered. *See Amnesty Int'l USA v. Clapper*, 638 F.3d 118, 128 n.12 (2d Cir. 2011) (holding that the court was "not compelled to accept" a legal-ethics expert's declaration regarding whether an ethical duty had been triggered, because the question was for the court to decide), *rev'd on other grounds*, 133 S. Ct. 1138 (2013); *see also Hygh v. Jacobs*, 961 F.2d

---

[5]    Rule 1.6 provides: "A lawyer shall not knowingly reveal confidential information, . . . or use such information to the disadvantage of a client or for the advantage of the lawyer or a third person" unless an exception applies. N.Y. R. Prof'l Conduct 1.6(a)(3). One such exception is "when permitted or required under these Rules or to comply with other law or court order." *Id.* at 1.6(b)(6). "Confidential information" is "information gained during or relating to the representation of a client, whatever its source, that is (a) protected by the attorney-client privilege, (b) likely to be embarrassing or detrimental to the client if disclosed, or (c) information that the client has requested be kept confidential." *Id*. at 1.6. Rule 1.9(c) provides that a lawyer shall not "use" or "reveal" a former client's confidential information, except as the Rules "permit or require."

359, 363 (2d Cir. 1992); *Marx & Co. v. The Diners' Club, Inc.*, 550 F.2d 505, 509-11 (2d Cir. 1977).[6]

We now turn to the merits. To overcome the First Amendment right of access, the proponent of sealing must "demonstrat[e] that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *In re N.Y. Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987) (internal quotation marks omitted). "Broad and general findings" and "conclusory assertion[s]" are insufficient to justify deprivation of public access to the record, *id.* (internal quotation marks omitted); "specific, on-the-record findings" are required. *United States v. Erie Cnty.*, 763 F.3d 235, 243 (2d Cir. 2014) (internal quotation marks omitted).

Here, defendants argue that "protection of confidential client communication" is a higher value. This assertion raises the question of whether any confidential client information is actually implicated in this case. Putting that aside for a moment, however, the assertion itself is questionable. We have implied—but never expressly held— that protection of the attorney-client privilege is a "higher value" under the First Amendment that may rebut the presumption of access. *E.g., id.; Lugosch*, 435 F.3d at 125. Defendants go further,

---

[6] To the extent that expert interpretations of the ethical rules are useful, they are better presented in an amicus brief or the parties' citations to treatises, rather than a declaration or affidavit.

however, arguing that the protection of "confidential client information" is a "higher value" superseding the First Amendment right of access and should have "equal status" to the attorney-client privilege.

The attorney-client privilege and the duty to preserve client confidences and secrets are "not co-extensive," however. *Doe v. A Corp.*, 330 F. Supp. 1352, 1355 (S.D.N.Y. 1971), *adopted sub nom. Hall v. A. Corp.*, 453 F.2d 1375, 1376 (2d Cir. 1972) (per curiam). The broader "ethical duty to preserve a client's confidences . . .[,] unlike the evidentiary privilege, exists without regard to the nature or source of information or the fact that others share the knowledge." *Brennan's, Inc. v. Brennan's Restaurants, Inc.*, 590 F.2d 168, 172 (5th Cir. 1979) (internal quotation marks omitted). We share the district court's skepticism of BLB&G's claim that "this broader ethical duty should be treated identically to . . . the narrower and more venerable attorney-client privilege."

In any event, even if we were to accept defendants' "higher value" argument, the complaint here does not contain "confidential" client information.

First, the complaint does not include information that is "likely to be embarrassing or detrimental to the client if disclosed." N.Y. R. Prof'l Conduct 1.6. Of course, the information may be seriously embarrassing to *counsel* (BLB&G and the AG's Office), but

not to the *client*, MPERS. Indeed, it is counterintuitive to suggest that MPERS was somehow complicit in an alleged kickback scheme that caused it to pay legal fees for unnecessary work. If anything, MPERS would appear to benefit from disclosure; the worst that can be said about it is that it was unlucky in its choice of counsel. In sum, BLB&G's claim about possible harm to MPERS is a mere "naked conclusory statement that publication . . . will injure" it. *Joy*, 692 F.2d at 894. Such a statement "falls woefully short of the kind of showing which raises even an arguable issue as to whether it may be kept under seal." *Id*.

Moreover, the fact of representation is generally neither privileged nor confidential. *See In re Grand Jury Subpoenas*, 803 F.2d 493, 496 (9th Cir. 1986). The complaint's allegation that BLB&G routinely assigns work to unqualified local counsel at the AG's Office's direction relates to a business practice, not to a "client confidence."

Finally, as the district court noted, "[t]he request to keep the alleged kickback scheme confidential was made by the member of the Attorney General's Office whose conduct is discussed in the Complaint. Insofar as this request (and perhaps even the underlying scheme) was adverse to the interests of MPERS, for the purpose of applying the ethical rule, the Court does not presume that the

attorney's request for confidentiality signifies the *client's* desire" (citation omitted).

## CONCLUSION

For the reasons stated above, we AFFIRM the judgment of the district court.