24-1729-cr
*United States v. Perryman*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 18th day of August, two thousand twenty-five.

Present:

> WILLIAM J. NARDINI
> SARAH A. L. MERRIAM
> MARIA ARAÚJO KAHN
> *Circuit Judges*.

---

UNITED STATES OF AMERICA,

> *Appellee*,

> v.                                                                    24-1729-cr

LAURA PERRYMAN,

> *Defendant-Appellant*.

---

| | |
|---|---|
| For Appellee: | MÓNICA P. FOLCH (Jacob M. Bergman, Steven J. Kochevar, Olga I. Zverovich, *on the brief*), Assistant United States Attorneys, *for* Matthew Podolsky, Acting United States Attorney for the Southern District of New York, New York, NY. |
| For Defendant-Appellant: | BRIAN E. SPEARS (Janna D. Eastwood, *on the brief*), Spears Manning & Martini LLC, Southport, CT. |

Appeal from a judgment of the United States District Court for the Southern District of New York (Denise L. Cote, *District Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant Laura Perryman appeals from a judgment of the United States District Court for the Southern District of New York (Denise L. Cote, *District Judge*) entered on June 17, 2024, sentencing Perryman principally to 72 months of imprisonment, to be followed by three years of supervised release. Following a two-week trial, Perryman was found guilty of conspiracy to commit wire fraud and health care fraud, in violation of 18 U.S.C. § 1349, and health care fraud, in violation of 18 U.S.C. § 1347. Perryman founded a company called Stimwave, which manufactured implantable devices used to treat chronic pain. The fraudulent scheme involved Perryman's creation of an inert device component called the "White Stylet," which she marketed as a functional receiver so that she could advise doctors to bill insurance companies for implanting the Stylet through a billing code designated for receivers. Perryman now appeals, challenging her conviction and sentence by arguing that: (i) the indictment was constructively amended by the trial evidence and the district court's jury instructions; (ii) the district court erred in its jury instructions regarding misbranding and intent under the health care fraud statute; (iii) the district court improperly excluded witness testimony and evidence; (iv) the district court erred in its loss amount calculation; and (v) the district court erred in applying a leadership-role enhancement. We assume the parties' familiarity with the case.

## I.        Constructive Amendment

A constructive amendment claim raised on appeal for the first time is subject to plain-error

review. *See United States v. McGinn*, 787 F.3d 116, 128 (2d Cir. 2015).[1] Here, Perryman did not make any of the constructive amendment challenges at the district court that she now makes on appeal. We therefore review for plain error.

"A constructive amendment occurs when the charge upon which the defendant is tried differs significantly from the charge upon which the grand jury voted." *United States v. Dove*, 884 F.3d 138, 146 (2d Cir. 2018). "Not every alteration of an indictment, however, rises to the level of a constructive amendment." *Id.* For a defendant to prevail on such a claim, she "must demonstrate that either the proof at trial or the trial court's jury instructions so altered an *essential element of the charge* that, upon review, it is uncertain whether the defendant was convicted of conduct that was the subject of the grand jury's indictment." *United States v. Salmonese*, 352 F.3d 608, 620 (2d Cir. 2003) (emphasis added). "An indictment is not constructively amended, however, where a portion of the indictment that is unnecessary for a conviction of the crime charged is removed or altered." *Dove*, 884 F.3d at 146.

Perryman contends that the Government's proffered evidence and the district court's jury instructions constructively amended the indictment because: (i) the Government changed its theory that the White Stylet was a "useless piece of plastic" to a theory that the stylet was being misbranded as a receiver; (ii) the district court instructed the jury on the misdemeanor offense of misbranding despite the fact that Perryman was not charged with misbranding; and (iii) the district court instructed the jury that it was "unnecessary for the government to prove that any doctors were deceived" by Perryman's actions. Appellant Br. at 25–27.

---

[1] Unless otherwise indicated, when quoting cases, all internal quotation marks, alteration marks, emphases, footnotes, and citations are omitted.

3

We find these arguments unavailing. First, both the Government's theory of the case and the indictment focused primarily on Perryman's misrepresentation of the White Stylet as a receiver. *See, e.g.*, App'x 45 ("LAURA PERRYMAN, the defendant, lied directly to doctors, and directed Company staff to lie to doctors, falsely stating that the White Stylet was a receiver."). Though the indictment also alleged that the White Stylet served no medical purpose, that allegation was non-essential and "does not affect the core elements of the crime." *Dove*, 884 F.3d at 147; *see also United States v. Autorino*, 381 F.3d 48, 54 (2d Cir. 2004) ("The government need not prove allegations of an indictment that are surplusage to the essential elements of the offenses charged."). Next, when the district court instructed the jury on misbranding, the court also issued a limiting instruction making clear that Perryman was not being charged with misbranding and that even if the jury were to find that misbranding occurred, they "may not consider evidence of misbranding as a substitute for proof that the defendant committed a crime with which she is charged in the indictment." App'x 990. The court's limiting instructions therefore eliminated any possibility that the instructions would modify an essential element of the offense such that the jury might convict Perryman of an offense other than those charged in the indictment. Finally, the district court's instruction stating that the Government did not need to prove any doctors were deceived is consistent with this Court's precedent. *See United States v. Reifler*, 446 F.3d 65, 96 (2d Cir. 2006) ("[T]he defendant need not have completed or succeeded in his scheme to defraud . . . ."). Because the jury did not need to find that any doctors were deceived to convict Perryman of fraud, no essential element of the charge was altered, and no constructive amendment occurred.

4

## II.     Jury Instructions

Perryman next argues that the district court erred in issuing jury instructions regarding misbranding and intent under the health care fraud statute.   This Court reviews preserved objections to jury instructions "*de novo* but will reverse only if all of the instructions, taken as a whole, caused a defendant prejudice."  *United States v. Applins*, 637 F.3d 59, 72 (2d Cir. 2011). Thus, "[a] defendant challenging a jury instruction as erroneous must show both error and ensuing prejudice."  *United States v. Sabhnani*, 599 F.3d 215, 237 (2d Cir. 2010).

We need not reach the correctness of Perryman's challenge to the jury instructions because she has failed to show how any claimed error caused her prejudice.  With respect to the court's instructions regarding misbranding, Perryman's argument fails for the reasons we state above— any possibility of prejudice was eliminated by the court's limiting instructions.  Perryman's challenge to the heath care fraud instructions is likewise without merit.  The district court's instruction tracked the two-pronged health care fraud statute, which criminalizes a scheme "(1) to defraud any health care benefit program" or "(2) to obtain, by means of false or fraudulent pretenses . . . money . . . under the custody or control of, any health care benefit program."  18 U.S.C. § 1347(a).  The court clarified that the second prong did not require the Government to prove that Perryman specifically intended to defraud a healthcare benefit program.  Perryman argues that the court's instruction with respect to the second prong allowed for conviction without finding that Perryman possessed any intent to defraud.  But Perryman cannot show any prejudice from the instruction: the verdict form shows that the jury found her guilty under both prongs and so necessarily found that she intended to defraud a healthcare benefit program (*i.e.*, Medicare). Any alleged error would therefore be harmless.

## III. Exclusion of Defense Witnesses and Billing Records

This Court reviews evidentiary rulings for abuse of discretion. *See United States v. Fazio*, 770 F.3d 160, 165 (2d Cir. 2014). "[S]o long as the district court has conscientiously balanced the proffered evidence's probative value with the risk for prejudice, its conclusion will be disturbed only if it is arbitrary or irrational." *United States v. Scully*, 877 F.3d 464, 474 (2d Cir. 2017). That is, a trial court's evidentiary decision "will be sustained unless manifestly erroneous." *United States v. Tapia-Ortiz*, 23 F.3d 738, 740 (2d Cir. 1994). And "[e]ven if a decision was manifestly erroneous, [this Court] will affirm if the error was harmless." *United States v. Litvak*, 889 F.3d 56, 67 (2d Cir. 2018).

Perryman challenges the district court's exclusion of testimony from two expert witnesses (Dr. David Spinner and Philip Desjardins) and three fact witnesses (Drs. George Arcos, Nameer Haider, and Jeffrey Dann). She also argues that the district court improperly excluded records of patients being reimbursed under the CPT 64590 code for implantation of a prior version of the StimQ PNS system without any stylet.

As to Dr. Spinner, Perryman contends that the district court erred in finding that he was not qualified to opine on CPT coding and that his testimony on this topic was irrelevant. We agree. Under Federal Rule of Evidence 702, a witness may be "qualified as an expert by knowledge, skill, experience, training, or education" where their "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Dr. Spinner was the lead author of a textbook on the techniques used in PNS procedures, published extensively on this subject, performed hundreds of PNS procedures, trained other physicians on the StimQ PNS system, and regularly applied CPT codes to such procedures in his practice. This experience was sufficient to qualify Dr. Spinner to offer expert testimony on CPT coding with

6

respect to the PNS procedures at issue in this case. Requiring Dr. Spinner to also have expertise in drafting CPT codes and implanting the White Stylet to qualify as an expert, as the district court did here, exceeded the court's proper gatekeeping function under Federal Rule of Evidence 702. Dr. Spinner's proposed testimony was also relevant to Perryman's intent, as it pertained to any ambiguity inherent in the relevant CPT codes, the responsibility of doctors for medical billing, and the appropriate coding for the StimQ PNS system, all of which bore on what Perryman should have understood to be covered by the CPT code 64590. The district court abused its discretion in concluding otherwise.

However, this error was harmless. Dr. Spinner's proposed testimony, had it been admitted, would not have refuted the overwhelming evidence of Perryman's fraudulent intent. *See United States v. McCallum*, 584 F.3d 471, 478 (2d Cir. 2009) ("[T]he strength of the government's case is the most critical factor in assessing whether error was harmless."). For example, Chad Andresen, Stimwave's Vice President of Marketing, testified that Perryman directed him and others to create the White Stylet knowing that it could not perform as a receiver, and that Perryman directly lied to, and instructed others to lie to, physicians about the White Stylet's ability to function as a receiver. The Government also introduced several exhibits, including training materials created by or at the direction of Perryman, that corroborated Andresen's testimony about Perryman's knowledge that the White Stylet was not a receiver and that it could not be billed under CPT code 64590, as well as Perryman's intent to deceive doctors into billing that code. In view of this evidence and the other trial evidence, excluding Dr. Spinner's proposed testimony was harmless.

The district court also erred in excluding the testimonies of Drs. George Arcos and Nameer Haider on their use of the StimQ PNS system in the field, as well as their beliefs about its

functionality and proper billing codes. The district court concluded that this testimony was irrelevant because whether doctors were deceived did not bear on Perryman's participation in a scheme to defraud or to make false statements with intent to deceive, and unduly prejudicial because it risked confusing the jury with irrelevant evidence. However, this testimony was relevant to Perryman's intent. Drs. Arcos's and Haider's independent beliefs, based on Medicare guidelines, that the White Stylet could be billed under CPT code 64590 bore on whether Perryman could have reasonably believed the same and whether she acted with fraudulent intent in advocating for use of this code. The district court's exclusion of this testimony was thus in error. *See Litvak*, 889 F.3d at 68 ("Relevancy is a very low standard."). However, given the overwhelming evidence of Perryman's fraudulent intent, this error too was harmless.

Perryman's challenge to Philip Desjardins's exclusion also fails. Perryman does not acknowledge, much less rebut, the district court's conclusion that Philip Desjardins's expert testimony on whether the White Stylet would require a new FDA approval process constituted improper testimony on domestic law. *See Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 144 (2d Cir. 2016) ("[O]ur longstanding rule [is] that expert testimony on issues of domestic law is not to be considered."). Her challenge to the exclusion of his testimony is therefore forfeited on appeal.

As to Jeffrey Dann, we conclude that Perryman has waived any challenge to the exclusion of portions of his testimony. Perryman confirmed in the district court that its preliminary ruling to strike parts of his testimony was "agreeable to the defendant." Trial Tr. 1732–33.[2] This objection was therefore waived. *See United States v. Spruill*, 808 F.3d 585, 597 (2d Cir. 2015)

---

[2] The appendices prepared by the parties do not include all of the trial transcripts. The portions of the trial transcript quoted here are docketed in the Southern District of New York docket, case number 1:23CR00117(DLC), at Docket Number 117.

8

("We have identified waiver where a party asserts, but subsequently withdraws, an objection in the district court."). Perryman later attempted to question Dann about the purpose of certain emails exchanged between her and Dann that had been introduced as exhibits by the Government. The district court excluded this testimony, holding that the testimony already adduced—Dann's identity and area of expertise—was sufficient to allow Perryman's counsel to argue that the emails were not evidence of deception. *See* Trial Tr. 1566–67. Even if this were error, Perryman has not shown how the exclusion of this detail caused her prejudice, and we therefore find no reversible error.

Finally, with respect to the billing records, we hold this evidence was properly excluded. Perryman argues that the billing records were relevant to her motive because they showed successful reimbursement claims for implantations of the device without the White Stylet under the receiver billing code. This argument misses the point. There is no indication that Perryman knew about the particular procedures that were listed in the billing records or how they were billed, meaning there is no connection between the evidence and her motive. The district court therefore did not abuse its discretion in excluding the records. *See United States v. Townsend*, 987 F.2d 927, 930–31 (2d Cir. 1993) (finding no abuse of discretion where the district court excluded evidence that defendant claimed was necessary to establish motive because there was no connection between the evidence and the criminal conduct).

## IV. Sentence Challenges

This Court reviews a sentence for procedural reasonableness under a "deferential abuse-of-discretion standard." *United States v. Singh*, 877 F.3d 107, 115 (2d Cir. 2017). This standard incorporates "*de novo* review of questions of law (including interpretation of the Guidelines) and clear-error review of questions of fact." *United States v. Legros*, 529 F.3d 470, 474 (2d Cir. 2008).

### a. Loss Amount Calculation

Perryman first argues that "loss" under the Sentencing Guidelines is limited to actual losses and that the district court erred in using "intended loss," as opposed to "actual loss," when determining the loss amount under U.S.S.G. § 2B1.1(b)(1). However, whether Section 2B1.1(b)(1) covers intended loss has no effect on the Guidelines loss amount, because Perryman was separately convicted of conspiracy to commit fraud, which is governed by U.S.S.G. § 2X1.1. The text of that Guidelines section requires courts to consider "any *intended* offense conduct" when applying any adjustments to the offense level for the substantive offense, meaning that defendants are responsible for the losses their conspiracy *intends* to create. U.S.S.G. § 2X1.1(a) (emphasis added); *see United States v. Rosa*, 17 F.3d 1531, 1549–50 (2d Cir. 1994) (affirming the district court's consideration of the intended loss amount under Section 2B1.1(b)(1) based on the application of Section 2X1.1(a)). Perryman does not challenge the calculation under Section 2X1.1. Her challenge is therefore without merit. *See United States v. Kukoyi*, 126 F.4th 806, 812 (2d Cir. 2025) ("[W]e affirm the district court's . . . intended loss amount pursuant to the language of Section 2X1.1(a) and need not address [defendant's] arguments regarding the Guidelines commentary to . . . Section 2B1.1(b)(1) because an independent ground for the district court's decision remains unchallenged.").

Perryman next argues that the intended loss amount calculation was speculative and unreliable. "Although the district court's factual findings relating to loss must be established by a preponderance of the evidence, the court need not establish the loss with precision but rather need only make a reasonable estimate of the loss, given the available information." *United States v. Uddin*, 551 F.3d 176, 180 (2d Cir. 2009). The district court properly relied on sales data for the device and testimony from sales professionals, which provided a range of estimates for how often

10

the White Stylet was implanted with the device, to arrive at a reasonable approximation of how many times the White Stylet was implanted in a given year. The loss amount calculation was therefore reasonably extrapolated from ample evidence in the record.

Perryman also argues that the use of the White Stylet had no bearing on whether the procedure was reimbursable under the billing code, and that the district court erred in finding Perryman intended to inflict any pecuniary harm. These arguments, too, are unpersuasive. The district court's loss amount calculation was based on the loss Perryman *intended*—whether an implantation of the device without the White Stylet is reimbursable under the same code is irrelevant because the evidence shows Perryman created the White Stylet with the *intention* that it would trigger a separate reimbursement under the code. That evidence also supported the district court's finding that Perryman intended to inflict pecuniary harm—evidence which includes testimony from other employees that Perryman's purpose in creating the White Stylet was to allow doctors, when they could not implant an actual receiver component, to still implant something and bill it as a receiver to collect reimbursements under the code. The record thus amply supported the district court's findings.

### b. Leadership-Role Enhancement

Lastly, Perryman challenges the district court's imposition of a leadership-role enhancement. Section 3B1.1(a) of the Sentencing Guidelines provides for a four-level increase in the offense level "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was *otherwise extensive*." U.S.S.G. § 3B1.1(a) (emphasis added). This Court has held that "[t]hree factors weigh in determining the extensiveness of the fraud: (i) the number of knowing participants; (ii) the number of unknowing participants whose activities were organized or led by the defendant with specific criminal intent; (iii) the extent to which the services

of the unknowing participants were peculiar and necessary to the criminal scheme." *United States v. Archer*, 671 F.3d 149, 165 (2d Cir. 2011).

Perryman argues that the district court erred in applying the enhancement because there was inadequate evidence to establish "unknowing participants whose activities were organized or led by [Perryman] with criminal intent." Appellant Br. at 76. We disagree. The record contains sufficient evidence to support the district court's finding that Perryman organized or led the activities of unknowing participants with criminal intent, including: (i) testimony that an engineer was present at a company meeting with Perryman when the White Stylet was first conceived and developed; (ii) testimony that, at a "masterclass" for doctor-trainers, Perryman falsely taught the doctor-trainers that the White Stylet was functional and made of copper, though it had no copper component and therefore could not function as a receiver; and (iii) testimony regarding training materials approved by Perryman and given to sale representatives that identified the White Stylet as a receiver so that the reps would know which billing code to use.

\* \* \*

We have considered Perryman's remaining arguments and find them unpersuasive. For the foregoing reasons, the judgment of the district court is **AFFIRMED**. Perryman's motion for bail pending appeal is **DISMISSED** as moot.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk

12