**14-1150-cr**
*United States v. Dove*

# In the

# United States Court of Appeals

## For the Second Circuit

————

AUGUST TERM, 2016

ARGUED: FEBRUARY 14, 2017
DECIDED: MARCH 6, 2018

No. 14-1150-cr

UNITED STATES OF AMERICA,
*Appellee,*

*v.*

STEVEN DOVE,
*Defendant-Appellant,*

JASON CARTER, WILLIE GREEN, ELIJAH INGRAM (AKA "EJ"), DENNIS
JENKINS (AKA "MEATY"), BENTLEY MARTIN (AKA "KILLA," "B"),
*Defendants.*

————

Appeal from the United States District Court
for the Eastern District of New York.
No. 1:12-cr-391-2 – Brian M. Cogan, *District Judge*.

————

Before: WALKER, POOLER, AND CHIN, *Circuit Judges*.

————

Defendant Steven Dove appeals his conviction and sentence entered in the United States District Court for the Eastern District of New York (Cogan, *J.*) following a jury trial conviction for conspiracy to distribute and possess with intent to distribute heroin and cocaine in violation of 21 U.S.C. §§ 841(b)(1)(C) and 846. On appeal, Dove argues that (1) a constructive amendment of the indictment resulted from the district court's jury instructions and the evidence adduced at trial; (2) the trial evidence created a prejudicial variance from the charges in the indictment; (3) the evidence is insufficient to support his conspiracy conviction; and (4) the district court erred in sentencing him as a career offender pursuant to U.S.S.G. § 4B1.1. Although we agree that the evidence demonstrates that Dove was a relatively minor participant, neither the jury instructions nor the evidence resulted in a constructive amendment of the indictment. Any variance from the indictment that occurred, moreover, did not affect Dove's substantial rights and therefore was not prejudicial. Dove's other arguments are also without merit. Accordingly, we AFFIRM Dove's conviction and sentence.

Judge CHIN dissents in a separate opinion.

————

RYAN C. HARRIS, Assistant United States Attorney (Susan Corkery, Assistant United States Attorney, *on the brief*), *for* Richard P. Donoghue, United

States Attorney for the Eastern District of New York, Brooklyn, NY, *for Appellee.*

JENNIFER N. MELLON, Assistant Federal Defender (Charles F. Willson, Assistant Federal Defender, *on the brief*), Federal Public Defenders for the District of Connecticut, New Haven, CT, *for Defendant-Appellant.*

————

JOHN M. WALKER, JR., *Circuit Judge*:

Defendant Steven Dove appeals his conviction and sentence entered in the United States District Court for the Eastern District of New York (Cogan, *J.*) following a jury trial conviction for conspiracy to distribute and possess with intent to distribute heroin and cocaine in violation of 21 U.S.C. §§ 841(b)(1)(C) and 846. On appeal, Dove argues that (1) a constructive amendment of the indictment resulted from the district court's jury instructions and the evidence adduced at trial; (2) the trial evidence created a prejudicial variance from the charges in the indictment; (3) the evidence is insufficient to support his conspiracy conviction; and (4) the district court erred in sentencing him as a career offender pursuant to U.S.S.G. § 4B1.1. Although we agree that the evidence demonstrates that Dove was a relatively minor participant, neither the jury instructions nor the evidence resulted in a constructive amendment of the indictment. Any variance from the indictment that occurred, moreover, did not affect Dove's substantial rights and therefore was not prejudicial.

Dove's other arguments are also without merit. Accordingly, we AFFIRM Dove's conviction and sentence.

**BACKGROUND**

Steven Dove appeals, following a jury trial, from his conviction on a single count of conspiracy to distribute and possess with intent to distribute heroin and cocaine in violation of 21 U.S.C. §§ 841(b)(1)(C) and 846. The indictment also charged Dove with the substantive crime of distributing and possessing with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1), but he was acquitted of that count.

The government's evidence at the four-day trial of Dove alone (after his co-defendants pleaded guilty) consisted primarily of the testimony of undercover agents and video recordings of Dove participating in a drug transaction. The evidence established that from approximately December 2011 to June 2012, the New York City Police Department ("NYPD") conducted an investigation known as "Operation Comb the Beach" into violent homicides and narcotics trafficking in the Far Rockaway neighborhood of Queens, New York. As part of the investigation, an undercover officer ("UC"), working with a confidential informant ("CI"), conducted a series of narcotics purchases specified in the indictment.

The UC presented himself as a drug dealer who intended to re-sell any narcotics he purchased. Although the UC participated in

more than thirty transactions during "Operation Comb the Beach," Dove was alleged to have participated in only one, which occurred on the last day of the conspiracy as alleged. At trial, the government presented evidence relating to only three of the drug transactions involving the UC.

The first transaction occurred on January 25, 2012. The CI and the UC met Elijah Ingram, a co-conspirator, in the UC's vehicle in a CVS Pharmacy parking lot in Far Rockaway. The UC purchased thirty Percocet pills from Ingram. Ingram told the UC that he could provide other narcotics in the future, and the UC gave Ingram his telephone number so that they could arrange future transactions.

On April 11, 2012, the CI arranged another narcotics sale—the purchase of fifty glassine envelopes of heroin—for the UC through an individual named Dennis Jenkins. Jenkins arranged for the UC to meet with a seller, Jason Carter, in the same CVS Pharmacy parking lot in Far Rockaway. At the meeting, which was recorded on video, Carter sold the heroin to the UC. An NYPD officer conducting surveillance observed Ingram transport Carter to and from the CVS parking lot where the heroin sale with the UC took place. In addition, the UC observed Ingram sitting in a vehicle in the CVS parking lot during the sale. After purchasing the heroin, the UC saw Carter enter Ingram's vehicle, which Ingram then drove away.

Finally, on May 22, 2012, Ingram orchestrated a purchase of 3.5 grams of cocaine by the UC from Steven Dove. The UC and Ingram met in the same CVS Pharmacy parking lot in Far Rockaway. This time, Ingram entered the UC's vehicle and directed him to drive to the Wavecrest apartment complex in Far Rockaway. During the drive, the UC gave Ingram $150 for the narcotics purchase. After arriving at the apartment complex, Ingram called Dove and then got out of the vehicle. A few minutes later, Ingram returned to the UC's vehicle accompanied by Dove. Ingram handed 3.5 grams of cocaine to the UC and introduced Dove to the UC as the source of supply for the cocaine.

Ingram instructed the UC and Dove to exchange telephone numbers and indicated that the UC should contact Dove directly to arrange future cocaine transactions because "that's [Dove's] thing." Gov. App. 2–3. The UC said that if he was successful selling the 3.5 grams of cocaine he had just purchased, he would contact Dove in the future to arrange cocaine sales. Dove and the UC also discussed pricing for potential future sales. Later that day, the UC called Dove to confirm that he would contact him in the future. Dove indicated that, if the UC were to call, Dove would "know what it's about." *United States v. Carter*, No. 12-cr-391, Dkt. Nos. 163–66, at 104:24–105:2 (E.D.N.Y. Mar. 11, 2014) ("Trial Tr.").

During the meeting, Ingram and Dove also discussed Dove's efforts to supply Ingram with heroin from other sources for resale by Ingram. The UC informed Ingram that his customers had been complaining about the heroin's quality. The UC discussed purchasing a "sleeve" of heroin from Ingram, and Ingram quoted a price of $700. Trial Tr. 101:7–13; Gov. App. 6–7. The UC also indicated that he would continue to purchase heroin from Ingram if his customers were satisfied with the heroin Ingram supplied. Ingram replied that he was hoping to be able to provide high-quality heroin in the future through Dove's sources, which Ingram and Dove had discussed earlier in the conversation.

After the government rested, Dove moved for judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure, asserting that the evidence was insufficient to support a conspiracy conviction and that, to the extent the evidence proved a conspiracy, it did not prove the one alleged in the indictment. The district court denied the motion.

At the conference to discuss jury instructions, the government requested that the court refrain from reading the names of the co-conspirators listed in the superseding indictment, each of whom had already pleaded guilty. The superseding indictment specified in Count One:

On or about and between January 1, 2012 and May 22, 2012, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JASON CARTER, STEVEN DOVE, WILLIE GREEN, also known as "Floyd Goodson" and "G," ELIJAH INGRAM, also known as "EJ," DENNIS JENKINS, also known as "Meaty," and BENTLEY MARTIN, also known as "Killa" and "B," together with others, did knowingly and intentionally conspire to distribute and possess with intent to distribute one or more controlled substances, which offense involved: (a) a substance containing heroin, a Schedule I controlled substance and (b) a substance containing cocaine, a Schedule II controlled substance, contrary to Title 21, United States Code, Section 841(a)(1).

(Title 21, United States Code, Sections 846 and 841(b)(1)(C); Title 18, United States Code, Sections 3551 *et seq.*).

No. 12-cr-391, Dkt. No. 54, at 1–2 (E.D.N.Y. July 17, 2012). The district court agreed to omit the names of Dove's co-conspirators, with the exception of Ingram. The district court ultimately instructed the jury that: "[o]n or about and between January 1, 2012 and May 22, 2012 . . . the defendant Steven Dove and Elijah Ingram, also known as 'EJ,' *together with others*, did knowingly and intentionally conspire to distribute and possess with intent to distribute one or more controlled substances." Trial Tr. 310:2–9 (emphasis added).

On April 11, 2013, the jury returned a verdict finding Dove guilty of Count 1, conspiracy to distribute and possess with intent to

distribute heroin and cocaine, and not guilty of Count 12 (the second count for Dove), distributing and possessing with intent to distribute cocaine. On May 8, 2013, Dove renewed his motion for acquittal under Federal Rule of Criminal Procedure 29(c) claiming that the evidence was insufficient. Alternatively, Dove asked that the judgment be vacated and a new trial ordered in the interests of justice pursuant to Federal Rule of Criminal Procedure 33. The district court denied both motions on July 11, 2013.

The pre-sentence report prepared by the probation officer determined that Dove was eligible to be sentenced as a career offender under U.S.S.G. § 4B1.1 because, in addition to (1) being over eighteen years of age when he participated in the drug conspiracy and (2) the conspiracy being a "controlled substance offense," (3) Dove had at least two prior felony convictions of either a controlled substance offense or a crime of violence. The pre-sentence report listed three previous convictions that qualified as predicate offenses for Dove's career offender status[1]: a 1986 conviction for Robbery in the First Degree for which he was sentenced to eighteen years of imprisonment; a 2000 conviction for

---

[1] The pre-sentence report also listed a fourth conviction for a controlled substance offense: Attempted Criminal Sale of a Controlled Substance in the Sixth Degree. That conviction, however, occurred in 1982 and Dove received a three-year prison sentence. Because Dove completed that sentence more than fifteen years prior to committing the current offense, that prior conviction could not serve as a predicate offense. *See* U.S.S.G. §§ 4B1.2 cmt. n.3; 4A1.2(e) (2014).

Criminal Sale of a Controlled Substance in the Third Degree resulting in a prison sentence of nine to eighteen years; and a 2000 conviction for Robbery in the Second Degree for which Dove was sentenced to prison for eight years and four months.

The probation officer, following the Career Offender Guideline, U.S.S.G. § 4B1.1, increased Dove's offense level from sixteen to thirty-two, which, when combined with Dove's criminal history category of VI, resulted in a Guidelines imprisonment range of 210 to 262 months. Because the statutory maximum sentence for a violation of 21 U.S.C. § 841(b)(1)(C) is twenty years, the effective Guidelines range was 210 to 240 months.

On April 7, 2014, at the sentencing hearing, the district court adopted the findings of the pre-sentence report without specifying which prior convictions served as predicate offenses for career offender status. The district court imposed a below-Guidelines prison sentence of 72 months to be followed by five years of supervised release. Dove now appeals both his conviction and sentence.

## DISCUSSION

On appeal, Dove contends that his conviction should be overturned for three reasons: (1) the indictment was constructively amended, either because the district court redacted the names of four of the five co-conspirators from the jury instructions or because

the government's evidence at trial effectively altered the conspiracy charged; (2) the government's evidence constituted a prejudicial variance from the terms of the indictment; and (3) the evidence was insufficient to support Dove's conviction. Dove further argues that his sentence was rendered procedurally unreasonable because the district court erred in sentencing him as a career offender. We address each of these arguments in turn.

## I.    Constructive Amendment of the Indictment

Dove alleges that the indictment was constructively amended because the scope of the six-member conspiracy charged in the indictment was impermissibly narrowed by either (1) the district court's jury instructions, which eliminated the names of four of Dove's co-conspirators, or (2) the government's evidence, which directly linked Dove to only one other co-conspirator, Ingram. Dove properly preserved his constructive amendment challenge and we accordingly review it *de novo*. *See United States v. Bastian*, 770 F.3d 212, 219 n.3 (2d Cir. 2014). Dove's constructive amendment argument is unavailing, however, because neither the jury instructions nor the government's evidence altered an essential element of the charges set forth in the indictment.

The Grand Jury Clause of the Fifth Amendment provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand

Jury." U.S. Const. amend. V, cl. 1. To satisfy the Fifth Amendment, an indictment must "contain the elements of the offense charged and fairly inform [the] defendant of the charge against which he must defend." *Bastian*, 770 F.3d at 217 (internal alterations and quotation marks omitted).

A constructive amendment occurs when the charge upon which the defendant is tried differs significantly from the charge upon which the grand jury voted. Not every alteration of an indictment, however, rises to the level of a constructive amendment. For a defendant to prevail on such a claim, he "must demonstrate that either the proof at trial or the trial court's jury instructions so altered an *essential element* of the charge that, upon review, it is uncertain whether the defendant was convicted of conduct that was the subject of the grand jury's indictment." *United States v. Salmonese*, 352 F.3d 608, 620 (2d Cir. 2003) (emphasis added). An indictment is not constructively amended, however, where a portion of the indictment that is unnecessary for a conviction of the crime charged is removed or altered. *See United States v. Miller*, 471 U.S. 130, 136–37 (1985). Rather, a constructive amendment occurs either where (1) an additional element, sufficient for conviction, is added, *see id.* at 138–39, or (2) an element essential to the crime charged is altered, *see United States v. Agrawal*, 726 F.3d 235, 259 (2d Cir. 2013).

The archetypal example of a constructive amendment created by adding an additional element sufficient for conviction is *Stirone v. United States*, 361 U.S. 212 (1960). In *Stirone*, the indictment alleged a violation of the Hobbs Act based on the obstruction of interstate importation of sand to be used in construction of a steel mill. 361 U.S. at 213–14. At trial, the prosecutor additionally argued that the defendant had obstructed the interstate exportation of steel to be manufactured at the mill once it was constructed. *Id.* at 214. This addition, the Court held, constructively amended the indictment because it provided an additional basis, one not considered by the grand jury, upon which the petit jury may have convicted the defendant. *Id.* at 215, 217–19.

A constructive amendment also occurs when the evidence presented at trial alters the essential elements of the charges specified in the indictment. In *United States v. Wozniak*, 126 F.3d 105, 106 (2d Cir. 1997), the defendant was charged with conspiracy to possess with intent to distribute cocaine and methamphetamines. The evidence at trial showed only that the defendant used cocaine and marijuana and that he possessed with the intent to distribute marijuana; no evidence indicated that he intended to distribute cocaine and methamphetamines as charged in the indictment. *Id.* at 107–08. Under the specific circumstances of this case, a constructive amendment occurred because the indictment did not notify the

defendant of the core of criminality which was to be proven at trial. *Id.* at 111; *cf. United States v. Knuckles*, 581 F.2d 305, 311–12 (2d Cir. 1978) (finding no constructive amendment when the evidence at trial related to cocaine rather than heroin, because the operative facts in the indictment and at trial were the same regardless of the substance involved); *see also United States v. D'Amelio*, 683 F.3d 412, 419–20 (2d Cir. 2012) (comparing the two cases).

An alteration of the indictment that does not affect the core elements of the crime is not a constructive amendment. In *United States v. Miller*, for example, the Court found that the indictment was not constructively amended when the government removed from the indictment the allegation of advance knowledge of the burglary charged. 471 U.S. at 133, 140. The Court's conclusion turned upon the fact that the petit jury was not required to find that the defendant had advance knowledge in order to convict, so no essential element of the charge was altered. *Id.* at 140.

Here, Dove asserts two grounds for finding that an essential element of the indictment was altered: (1) the district court, when instructing the jury, removed the names of four of the five co-conspirators, and (2) the evidence presented at trial directly linked Dove only to Ingram. We address each of these arguments in turn.

## A. The District Court's Jury Instructions

We perceive three related but distinct theories as to how the co-conspirators' names could have been essential to the charges set forth in the indictment: (1) the names represented the specific identities of Dove's co-conspirators; (2) the names effectively set the minimum size of the conspiracy alleged in the indictment; or (3) the names designated a specific conspiracy involving mostly heroin. We are convinced, however, that the specific names of the co-conspirators were not essential under any theory.

Turning first to the identities of Dove's co-conspirators, "it is well settled law that an individual need not know the identities of all coconspirators in order to be found guilty of being a member of a conspiracy." *United States v. Harris*, 8 F.3d 943, 946 (2d Cir. 1993). The removal of four of the five names thus did not constructively amend the indictment because the government did not have to prove the identities of those named in order to secure a conviction of Dove for participating in the conspiracy alleged in the indictment.

Similarly, the names did not constitute a necessary element by setting the minimum size of the conspiracy. Both the jury instructions and the indictment specified that the named co-conspirators, Dove and Ingram, conspired "with others." After the names of the conspirators other than Dove and Ingram were removed from the jury instructions, therefore, the difference in the

size of the conspiracy alleged was one with at least four members as opposed to one with at least eight, six of whom were named and at least two "others." This alteration did not affect the burden on the government, which was not required to demonstrate the precise details or size of the conspiracy, but only to create a permissible inference that Dove was aware of his role in a larger scheme. *See United States v. Williams*, 205 F.3d 23, 33 (2d Cir. 2000). We thus fail to see how the elimination of the names of four co-conspirators altered an essential element of the allegations set forth in the indictment.

The dissent suggests a third theory as to how removing the names constituted a constructive amendment: the removal effectively permitted proof of a smaller, independent conspiracy between Dove and Ingram involving cocaine to substitute for proof of a larger conspiracy mainly involving the sale of heroin, and therefore the government was never required to prove that Dove knowingly participated in the broader conspiracy. We disagree.

First, although the May 22 transaction between Dove and the UC only involved cocaine, Ingram explained to Dove his plan for Dove's sources to provide heroin for resale to others. In response, Dove assured Ingram that his sources supplied good heroin. Trial Tr. 96:7–25. From this conversation, a reasonable jury could infer that Dove agreed to the plan and was aware of his role in a broader

conspiracy to distribute both cocaine and heroin. Second, even if we accept that cocaine was Dove's "thing," this fact does nothing to rebut the inference that Dove understood that by serving as a source of cocaine for buyers referred to him by Ingram, he was participating in a larger, multi-person conspiracy to distribute wholesale quantities of narcotics. *See id.* ("A single conspiracy may be found where there is mutual dependence among the participants, a common aim or purpose[,] or a permissible inference from the nature and scope of the operation, that each actor was aware of his part in a larger organization where others performed similar roles equally important to the success of the venture.") (citation omitted). Dove depended at least in part on referrals from Ingram—referrals possibly generated, as here, by heroin transactions that Dove did not participate in directly. It was permissible to infer from this evidence that Dove was aware that others performed roles similar to his own in the service of a larger conspiracy to sell narcotics to multiple buyers. Accordingly, we cannot see how redacting the names altered the government's burden of proof or affected the jury's ability to determine that Dove was aware of his role in a broader conspiracy.

### B. The Government's Evidence

Dove also contends that the evidence presented at trial— principally that he was directly linked to only one other member of

the conspiracy, Ingram—also resulted in a constructive amendment. Again, we are not persuaded.

The evidence at trial showed that: (1) Dove participated in one transaction on the last day of the alleged conspiracy; (2) that transaction was the only one to involve cocaine (as opposed to heroin or pills); (3) there was no evidence directly linking Dove to members of the conspiracy other than Ingram; and (4) there was no evidence that investigators were aware of Dove prior to May 22.

We agree with Dove that the evidence demonstrated that he was a relatively minor participant in the conspiracy. We do not agree, however, that the evidence resulted in a constructive amendment from the conduct considered by the grand jury. The superseding indictment alleged that Dove was only involved in a single overt act, which (1) occurred on the last day of the conspiracy; (2) directly involved only one other member of the alleged conspiracy, Ingram; and (3) concerned cocaine rather than heroin or pills. *See* No. 12-cr-391, Dkt. No. 54, at 7. The evidence at trial of Dove's involvement was wholly consistent with the terms of the superseding indictment voted on by the grand jury. *See United States v. Dupre*, 462 F.3d 131, 140–42 (2d Cir. 2006). The evidence tended to prove that Ingram and Dove agreed to sell cocaine to the UC, and that Ingram told the UC, in Dove's presence, that Dove had sources for heroin that could meet the UC's needs. Given this consistency,

we cannot find that the indictment failed to provide Dove with sufficient notice of the charges against which he would be required to defend himself.

## II.    Prejudicial Variance from the Indictment

Dove argues further that the evidence adduced at trial, at a minimum, resulted in a prejudicial variance because it demonstrated the existence of multiple conspiracies involving Ingram, one of which was a two-person conspiracy between Dove and Ingram, while the indictment alleged a single larger conspiracy.

We similarly review Dove's prejudicial variance challenge *de novo*. *See D'Amelio*, 683 F.3d at 416. "A variance occurs when the charging terms of the indictment are left unaltered, but the evidence at trial proves facts materially different from those alleged in the indictment." *Id.* at 417 (alteration omitted). Whereas a defendant alleging a constructive amendment must establish that the evidence or the jury charge on which he was tried broadens the possible bases for conviction beyond the indictment voted on by the grand jury, a defendant alleging a variance must establish that the evidence offered at trial differs materially from the evidence alleged in the indictment. *See United States v. Rigas*, 490 F.3d 208, 225–26 (2d Cir. 2007). A constructive amendment is a *per se* violation of the Grand Jury Clause of the Fifth Amendment, requiring reversal. *United States v. McCourty*, 562 F.3d 458, 470 (2d Cir. 2009). By contrast,

reversal is only warranted for a variance if the defendant shows both: (1) the existence of a variance, and (2) that "substantial prejudice" occurred at trial as a result. *See United States v. McDermott*, 245 F.3d 133, 139 (2d Cir. 2001). This distinction is an important factor in our decision to affirm.

The government conceded at argument that a variance occurred in Dove's trial because a single conspiracy was alleged but the evidence would allow the jury to find the existence of multiple conspiracies. The dispositive question therefore is whether this variance was prejudicial. In assessing whether a defendant is prejudiced when the evidence would allow a jury to find multiple conspiracies rather than the single conspiracy alleged, "[o]ne of the principal considerations . . . is the 'spill[-]over effect' of permitting testimony regarding one conspiracy to prejudice the mind of the jury against the defendant who is not a part of that conspiracy but another." *Harris*, 8 F.3d at 947. Accordingly, we consider several factors, including: (1) whether the court gave a *Pinkerton* charge (permitting a jury, once it finds that a conspiracy exists, to find a defendant guilty of a separately charged substantive crime committed by a co-conspirator in furtherance of that conspiracy for which the defendant, as a conspirator, bears responsibility); (2) whether out-of-court statements of persons not members of the defendant's conspiracy were used against the defendant; (3) whether

there was prejudicial spill-over due to a large number of joined defendants; and (4) whether any inflammatory or shocking evidence (from outside the defendant's conspiracy) came in against the defendant. *See McDermott*, 245 F.3d at 139; *see also Pinkerton v. United States*, 328 U.S. 640 (1946). After a multiple-conspiracy variance is shown, the presence of just one of these factors may be sufficient to satisfy the prejudice prong. *See United States v. Johansen*, 56 F.3d 347, 351–52 (2d Cir. 1995).

Dove concedes that none of the *McDermott* prejudice factors are present. Appellant's Br. at 29. He argues, nonetheless, that he can demonstrate prejudice because "[o]ne of the core purposes of the Grand Jury Clause . . . is to protect a defendant's right to notice of the charges against him." *Id.* Dove provides no authority, however, for the proposition that a defendant may satisfy the multiple conspiracy variance prejudice prong where none of the *McDermott* factors are present. *See id.* at 29–31.

Moreover, we do not find Dove's notice argument persuasive for two reasons. First, although the evidence at trial may have permitted the jury to find multiple conspiracies, Dove had notice from the indictment that the government would attempt to prove three drug transactions and that those transactions were overt acts in furtherance of a conspiracy involving Dove, Ingram, and others. Dove also knew that he was alleged to have participated as a seller

in only one controlled buy involving only one other named co-conspirator. We thus do not see how he could have been surprised by the evidence upon which the government relied at trial.

Second, the concern underlying the variance prejudice prong is whether "the evidence proving the conspiracies in which the defendant did *not* participate [*i.e.*, those between Ingram and the other alleged members of the larger conspiracy] prejudiced the case against [Dove] in the conspiracy to which he *was* a party." *Johansen*, 56 F.3d at 351 (emphases in original). Indeed, this purpose is evident from the types of considerations embodied in the *McDermott* test. Here, the government introduced evidence of two acts involving Ingram but not Dove—the January 25, 2012 sale of thirty Perocet pills to the UC and the April 11, 2012 sale of fifty glassine envelopes of heroin to the UC—in addition to evidence demonstrating the business relationship between Ingram and Dove, with Dove serving as a supplier of cocaine and heroin. Dove provides no evidence, nor is there any reason to suspect, that the two undercover buys involving Ingram but not Dove prejudiced Dove's defense in regards to the conspiracy between himself and Ingram. We accordingly see no basis to conclude that Dove's substantial rights were affected by the evidence adduced at trial and conclude that any variance was not prejudicial.

### III.    Sufficiency of the Evidence

Dove also argues that his conviction should be overturned because the evidence at trial was insufficient to convict him of conspiracy to distribute heroin and cocaine. The evidence at trial demonstrated at a minimum an agreement between Dove and Ingram to engage in transactions resulting in the transfer of narcotics—both cocaine and heroin. All of the hallmarks of a conspiracy, therefore, are present. *See United States v. Parker*, 554 F.3d 230, 234 (2d Cir. 2009). Dove argues, however, that the evidence was insufficient due to the "buyer-seller" exception. Dove is mistaken.

We review a claim of insufficiency of the evidence *de novo*. *United States v. Geibel*, 369 F.3d 682, 689 (2d Cir. 2004). Nevertheless, a conviction must be upheld if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original), and the evidence must be viewed in the light most favorable to the government, *United States v. Temple*, 447 F.3d 130, 136–37 (2d Cir. 2006). In the conspiracy context, moreover, "the existence of a conspiracy and a given defendant's participation in it with the requisite knowledge and criminal intent may be established through circumstantial evidence." *United States v. Chavez*, 549 F.3d 119, 125 (2d Cir. 2008).

The buyer-seller exception is a narrow one: it stands only for the proposition that "the mere purchase and sale of drugs does not, without more, amount to a conspiracy to distribute narcotics." *United States v. Brock*, 789 F.3d 60, 63 (2d Cir. 2015). The primary reason for this exception is to avoid imposing the more severe punishments resulting from liability for conspiracy to distribute controlled substances upon individuals who merely buy and possess controlled substances for their own personal use. *See Parker*, 554 F.3d at 234–35. The exception does not apply if "the evidence supports a finding that [the buyer and seller] shared a conspiratorial purpose to advance other transfers, whether by the seller or by the buyer." *Brock*, 789 F.3d at 63. Though there is not an exhaustive list of factors courts consider, we have identified the following as relevant: "[(1)] prolonged cooperation between the parties, [(2)] a level of mutual trust, [(3)] standardized dealings, [(4)] sales on credit, and [(5)] the quantity of drugs involved." *Id.* at 64 (alteration omitted).

The buyer-seller exception does not apply here. The evidence adduced at trial showed that Dove and Ingram: (1) enjoyed mutual trust and extensive cooperation, including Ingram's familiarity with Dove's criminal history and ability to procure large quantities of high-quality narcotics; (2) had a history of standardized dealings in wholesale quantities of heroin; and (3) were planning future sales of wholesale quantities of heroin plainly not intended for personal use.

Dove's argument that the buyer-seller exception applies in this instance is wholly without merit.

### IV.   Career Offender Designation

Finally, Dove argues that he was improperly sentenced as a career offender because two of the offenses specified in the pre-sentence report as predicate offenses under the Career Offender Guideline, U.S.S.G. § 4B1.1, do not qualify as such. Specifically, Dove contends that the probation officer inappropriately considered his New York convictions for first- and second-degree robbery as crimes of violence under the force clause of the Career Offender Guideline.

The parties dispute whether Dove preserved this objection to his designation as a career offender.[2] *See* Appellant's Br. at 36; Appellee's Br. at 35. When a party properly objects to a sentencing error in the district court, we review for harmless error; issues not raised in the district court are reviewed for plain error. *United States v. Villafuerte*, 502 F.3d 204, 207 (2d Cir. 2007).

---

[2] Dove submitted a sentencing memorandum arguing that "the career offender determination clearly overstates the true guideline range" under which Dove should be placed. No. 12-cr-391, Dkt. No. 168, at 5 (E.D.N.Y. Mar. 24, 2014). At the sentencing hearing, the district court referred to Dove's "objection to the career criminal enhancement." Sentencing Tr. at 8:6–7. The government argues that these were not properly raised objections to whether Dove met the technical requirements of the Career Offender Guideline. Appellee's Br. at 35 n.2 (as corrected Jan. 13, 2017).

We need not resolve whether the objection was preserved because there was no error here, plain or otherwise. The district court properly sentenced Dove as a career offender. Dove may at one time have had a viable argument that New York robbery did not categorically (in every case) qualify as a crime of violence under the force clause of U.S.S.G. § 4B1.1 and that the section's residual clause was void for vagueness after *Johnson v. United States*, 135 S. Ct. 2551 (2015), but neither argument is available now. In the wake of *Beckles v. United States*, 137 S. Ct. 886 (2017), which held that the Guidelines are immune from a vagueness challenge, we have held that New York robbery, regardless of degree, is categorically a crime of violence pursuant to the residual clause in effect at the time of Dove's April 7, 2014 sentencing hearing.[3] *See United States v. Jones*, 878 F.3d 10, 18–19 (2d Cir. 2017) (as amended). Dove's prior convictions therefore are both crimes of violence within the meaning of U.S.S.G. § 4B1.1 and he was properly designated a career offender.

## CONCLUSION

For the reasons stated above, we AFFIRM both Dove's conviction and the sentence imposed by the district court.

---

[3] With only one exception not relevant here, district courts are to sentence defendants pursuant to the version of the Guidelines in effect on the date of sentencing. *See* 18 U.S.C. § 3553(a)(4)(A); *see also Beckles*, 137 S. Ct. at 890 & n.1.

DENNY CHIN, *Circuit Judge:*

I respectfully dissent.

The indictment charged a six-person, five-month heroin and cocaine conspiracy. At trial, after the close of the evidence, the district court eliminated four of the names and read to the jury a redacted Count One that charged defendant-appellant Steven Dove with being a member of, in essence, a two-person conspiracy. Both the original and redacted indictment included the words "together with others," but the proof at trial was limited to Dove's interaction with one co-conspirator -- Elijah Ingram -- involving one sale of cocaine on the last day of the charged conspiracy.

The government acknowledges that there was a variance between the proof at trial and the conspiracy charged in the indictment, but argues that it was a non-prejudicial variance. Dove argues that there was more than a variance -- he contends that there was an amendment. Indeed, Dove argues that "the indictment was amended to charge a different conspiracy." Appellee's Br. at 16. I agree.

"[A] court may not alter or amend the indictment, literally or constructively, once it has been returned by the grand jury. An indictment has been constructively amended when the trial evidence or the jury charge operates

to broaden the possible bases for conviction from that which appeared in the indictment." *United States v. McCourty*, 562 F.3d 458, 470 (2d Cir. 2009) (internal citations and quotations omitted). A constructive amendment is viewed as a *per se* violation of the Grand Jury Clause, requiring reversal even absent a showing of prejudice. *United States v. Wozniak*, 126 F.3d 105, 109 (2d Cir. 1997). Not all divergences from the terms of an indictment, however, qualify as an unconstitutional constructive amendment, and we have "consistently permitted significant flexibility in proof, provided that the defendant was given *notice* of the *core of criminality* to be proven at trial." *United States v. D'Amelio*, 683 F.3d 412, 417 (2d Cir. 2012) (emphasis in original).

In my view, the indictment was constructively amended by the trial court's reading of the redacted Count One to the jury and the trial evidence, for the following reasons:

- Dove was involved in only one of 30 transactions -- the last transaction, on May 22, 2012, the last day of the alleged conspiracy.

- The last transaction was the only one that involved cocaine; the first 29 transactions involved principally heroin and some pills.

2

- The undercover telephoned Ingram for cocaine, but Ingram did not have cocaine, and that was when Ingram reached out to Dove.

- When Ingram introduced the undercover to Dove, he told them: "[Y]'all change numbers.  That way I can be out of it.  You can still talk, talk to me, contact me . . . .  But, you know, holler at him, cause that's his thing.  That's his thing."  Appendix 2-3.

- There was no evidence that Dove had any involvement or contact with any of the four co-conspirators whose names were redacted.

- There was no evidence that any of the investigators in the comb-the-beach investigation were aware of Dove prior to the events of May 22nd.

Thus, the evidence presented showed that Dove had his own "thing": Dove had a cocaine business and Ingram reached out to him because the undercover wanted cocaine -- rather than heroin or pills and Ingram was unable to provide cocaine.

The government's shift in its theory of the case -- centered around the evidence summarized above -- even surprised the district court:  "The case the [g]overnment put on was not the case I expected to hear."  Addendum at 13. While the district court expected to hear a case about Dove's involvement in a six-person,

3

five-month heroin and pills conspiracy, as charged in the indictment, the government presented proof instead of a distinct, two-person, one-day cocaine conspiracy. As a consequence, the indictment did not give Dove notice of the "core of criminality to be proven at trial." *United States v. Agrawal*, 726 F.3d 235, 259-60 (2d Cir. 2013) (citation omitted). Instead of the broader conspiracy originally charged in the indictment, the government tried Dove on a very different charge: a one-transaction deal where Ingram brought a buyer to Dove who wanted something Ingram could not provide -- cocaine.

To prove a conspiracy, the government must show "mutual dependence among the participants, a common aim or purpose or a permissible inference from the nature and scope of the operation, that each actor was aware of his part in a larger organization where others performed similar roles equally important to the success of the venture." *United States v. Williams*, 205 F.3d 23, 33 (2d Cir. 2000) (internal quotation marks and citation omitted). Courts must determine whether the conspiracy was a "single enterprise." *United States v. Cambindo Valencia*, 609 F.2d 603, 623 (2d Cr. 1979) (citing *Kotteakos v. United States*, 328 U.S. 750, 769 (1946)). To make this determination courts evaluate "the degree of connection between each alleged conspirator and the enterprise as a whole." *Id.*

4

Here, once the names were omitted from the indictment it became exceedingly difficult for the jury to determine Dove's awareness of the enterprise and agreement to participate in the broad, originally-charged conspiracy. The evidence against Dove did not indicate that he was a part of an enterprise with Ingram and four other co-conspirators, but instead that he had his own operation and that the transaction between Ingram and Dove was more of a referral than a joint venture. By redacting the indictment, however, the district court did not require the government to prove Dove's awareness of his part in the larger enterprise, but rather allowed the jury to convict on any conspiracy involving Ingram and Dove, expanding the possible bases for conviction beyond the conspiracy charged in the indictment.

The constructive amendment -- made after the close of the government's case -- effectively permitted proof of a smaller, independent conspiracy involving cocaine between Dove and Ingram to substitute for proof of a larger, broader conspiracy involving heroin and pills. As a result, the jury was not required to infer that Dove was aware of his part in a larger organization; rather, his agreement to participate in one transaction with Ingram alone sufficed to prove both the existence of a broad conspiracy and Dove's knowing

5

participation in it. The district court itself expressed concern with the government's theory, before ultimately deciding to redact the indictment, noting that it "pushes the outer limits of conspiracy" and is "not a slam-dunk for the [g]overnment by any means." Addendum at 8.

The government asserts that it was permitted to focus its proof on "only a subset of the conduct that formed the basis for the charged conspiracy." Appellee's Br. at 13; *see United States v. Salmonese*, 352 F.3d 608, 620 (2d Cir. 2003) ("Where charges are constructively narrowed or where a generally framed indictment encompasses the specific legal theory or evidence used at trial, there is no constructive amendment." (citation and internal quotation marks omitted)). Although the proof at trial narrowed the scope of the charged conspiracy, it did not narrow "the possible bases for conviction from that which appeared in the indictment." *McCourty*, 562 F.3d at 470 (citing *Rigas*, 490 F.3d 208, 225 (2d Cir. 2007)). Indeed, to the contrary, the district court's action had the effect of *broadening* the basis on which Dove could be convicted -- it permitted Dove to be convicted of virtually any conspiracy involving just him and Ingram rather than a broader conspiracy that involved multiple players in addition to him and Ingram. The proof presented was not, as the government argues, that Dove played a small

6

role in a larger conspiracy but, rather, that Dove played a large role in a smaller, different conspiracy.

This is not a case where the language removed from the indictment was mere surplusage or "unnecessary to an offense that is clearly contained within it." *United States v. Miller*, 471 U.S. 130, 144 (1985). Dove's trial strategy was to challenge the government's claim that he was aware of his role in a larger narcotics distribution conspiracy with a shared purpose. The possibility of such a challenge, however, was effectively taken away by the constructive amendment of the indictment.

The majority suggests that Dove's challenge is without merit because a criminal defendant need not know the identities of his or her coconspirators. *See United States v. Harris,* 8 F.3d 943, 946 (2d Cir. 1993). The cases on which *Harris* relies, however, are factually distinct from the matter at hand. *Harris* considers whether a conspiracy can be found where the government has evidence of coordination with others but is unable to determine the identity of the coconspirators. *Id.; see also United States v. Cepeda,* 768 F.2d 1515, 1517 (2d Cir. 1985) (holding that there was insufficient evidence of a conspiracy based on the presence

of drug paraphernalia in a dwelling cohabitated with others).[1] Here, the government charged a conspiracy with individually identifiable coconspirators and then simply removed the names of those individuals when Dove tried to demonstrate that he was unaware of their involvement.

For the reasons set forth above, I conclude that the district court's redaction of Count One and the government's proof at trial constructively amended the indictment as such a way as to deprive Dove of notice of the core of criminality to be proven at trial. *See United States v. Bastian*, 770 F.3d 212, 220 (2d Cir. 2014) ("Ultimately, whether an indictment has been constructively amended comes down to whether 'the deviation between the facts alleged in the indictment and the proof [underlying the conviction] undercuts the[] constitutional requirements' of the Grand Jury Clause: allowing a defendant to prepare his defense and to avoid double jeopardy." (quoting *United States v. Rigas*, 490 F.3d at 228)). "Although the trial court did not permit a formal amendment of the indictment, the effect of what it did was the same." *Stirone v. United States*, 361 U.S.

---

[1] The maxim that a coconspirator's identity need not be known is often coupled with the limitation that "the evidence must support the existence of such unknown persons and their complicity" -- a clarification that is only useful if there is doubt as to the literal existence of a coconspirator, a stark contrast to the situation here, where the alleged coconspirators were not only known to exist but were identified by name. *United States v. Cepeda,* 768 F.2d 1515, 1517 (2d Cir. 1985).

212, 217 (1960).  I would vacate the judgment of the district court.  Accordingly, I dissent.