20-864-cr
*United States v. Polk*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

*Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.*

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 27th day of March, two thousand twenty-three.

PRESENT:    Pierre N. Leval,
            Barrington D. Parker,
            Steven J. Menashi,
                    *Circuit Judges.*

———————————————————————————

UNITED STATES OF AMERICA,

     *Appellee,*

    v.                                                                  No. 20-864

TERRELL POLK,

     *Defendant-Appellant.*[*]

———————————————————————————

———————————

[*]  The Clerk of Court is directed to amend the caption as set forth above.

*For Appellee*:                                    NICHOLAS FOLLY (Stephen J. Ritchin, *on the brief*), Assistant United States Attorneys, *for* Damian Williams, United States Attorney for the Southern District of New York, New York, NY.

*For Defendant-Appellant*:                 SEAN MICHAEL MAHER, Law Offices of Sean M. Maher, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Daniels, J.).

Upon due consideration, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant Terrell Polk appeals his criminal convictions for conspiracy to distribute and possess with intent to distribute 280 grams or more of crack cocaine (as well as a quantity of marijuana); distribution and possession with intent to distribute crack cocaine; using, carrying, and possessing firearms, during and in relation to, and in furtherance of, the narcotics conspiracy; and possession of ammunition after being convicted of a crime punishable by imprisonment for a term exceeding one year.[1] He argues that (1) the jury did not have sufficient

---

[1] These charges were Counts One, Two, Three, and Four, respectively, in the indictment.

evidence to find him guilty on Counts One, Three, and Four and (2) the district court abused its discretion in denying his motion for a new trial. We disagree and affirm the district court's judgment. We assume the parties' familiarity with the facts and procedural history.

## I

The evidence at trial showed that Polk was a member of a drug-distribution gang responsible for selling cocaine and marijuana in the Bronx's Highbridge neighborhood.[2] Witness testimony indicated that members of the gang shared weapons, information, drugs, and customers. According to witness testimony, Polk joined the gang's drug conspiracy upon his 2014 release from prison for unrelated crimes.

On July 25, 2015, a man known as "Euro" was shot in front of 1055 University Avenue. Cicero Williams, a former member of the drug-distribution gang and an eyewitness for the government, testified that Polk shot Euro for selling marijuana at 1055 University Avenue, which Williams's crew considered to be within their exclusive drug-selling territory. Williams further testified that,

---

[2] Polk maintains that he was not a member of the gang.

after the shooting, members of the crew threatened Euro's "baby mother" not to call the police, then returned to the scene of the shooting to dispose of the evidence.

Ten days later—on August 4, 2015—a second rival drug dealer known as "Ryan" was shot outside a store on 162nd Street and Anderson Avenue, wounding both Ryan and a bystander. According to Williams, Ryan had been involved in a confrontation with Polk and other members of the crew a few days before the shooting. Although Williams was not present for this shooting, he testified that Polk had told him that Polk shot Ryan using a sawed-off shotgun that the crew shared for their enterprise. Williams's accounts of the shootings were corroborated by photographs of the crime scene, testimony from one of the victims of the second shooting, and surveillance video.

On August 26, 2015, Polk was arrested after the police found a loaded gun in the backseat armrest of a car that Polk was driving. The DNA of two of Polk's accomplices was found on the gun, but Polk's DNA was not found on the gun.

Williams was arrested in November 2016 for drug and firearms offenses. Williams began cooperating with the government in its investigation of his crew and he served as a key witness for the government in the trial against Polk and other crew members. Williams testified that although Polk had his own source for

4

drugs, the crew as a whole shared guns, territory, and information in their efforts to sell narcotics in their part of the Bronx. Williams testified that he was present at the shooting of a rival drug dealer on July 25, 2015, when Polk shot a rival drug dealer for treading on Polk's crew's turf. Williams also testified that Polk confided in him about his role in the shooting of Ryan on August 4, 2015.

Williams also gave extensive testimony about the drug conspiracy. He testified that the conspiracy enabled him to sell 100 or more grams of crack cocaine per month. He explained that he and Polk worked with other associates to sell drugs. Williams testified that on multiple occasions, he supplied Polk with crack cocaine to sell—about 15 or 20 grams four or five separate times. That Polk also sold drugs was corroborated by the fact that police found 3.5 grams of crack cocaine, packaged for distribution, in Polk's dwelling during a search on February 3, 2017.

After a three-day trial, a jury found Polk guilty of all four counts that the government charged: (1) conspiracy to possess and distribute marijuana and crack cocaine, (2) possession and distribution of crack cocaine, (3) possession and use of a firearm, and (4) possession of ammunition by a felon. On November 2, 2018, Polk filed a motion before the district court to vacate the jury's guilty verdict on the first

and fourth counts for insufficient evidence and to order a new trial on the third count. The district court denied this motion.

On May 20, 2019, about eight months after the trial concluded, the government informed Polk and the district court that a cooperating witness in an unrelated case stated in a proffer to the government that he had heard that Williams was involved in the murder of a man named Frank Jones in the Bronx. This cooperating witness was in jail at the time of the murder and had heard of Williams's responsibility from others. In interviews with the government, Williams disclaimed any responsibility. Polk renewed his motion on December 9, 2019, for a new trial in light of the revelations, arguing that Williams's potential responsibility for the murder undermined his credibility in Polk's trial. The district court denied the renewed motion, noting that other material evidence—including audio recordings, surveillance videos, and DNA and ballistics evidence— corroborated Williams's testimony against Polk. The district court also observed that, even if Williams were responsible for Jones's murder, it was unlikely that the revelation would have swayed the jury, which had found Williams's testimony credible despite its awareness of his commission of other violent crimes.

Polk timely appealed the denial of his post-conviction motions. On appeal, Polk argues that (1) the trial evidence was insufficient to convict him of drug conspiracy; (2) the trial evidence was insufficient to support a finding that he illegally possessed ammunition while a felon; (3) because Count Three depended on the existence of the narcotics conspiracy charged in Count One, the evidence was likewise insufficient to support the jury's verdict on this count; and (4) the district court abused its discretion by denying Polk's Rule 33(b) motion for a new trial after a cooperating witness reported having heard that Williams committed a murder. We conclude that the trial evidence was sufficient to convict Polk of the offenses for which he was convicted and that the district court did not abuse its discretion in denying Polk's motion for a new trial.

## II

"We review de novo challenges to the sufficiency of the evidence." *United States v. Sabhnani*, 599 F.3d 215, 241 (2d Cir. 2010). Nevertheless, a defendant-appellant bears a heavy burden in a sufficiency-of-the-evidence challenge. "A jury verdict must be upheld if, 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Gahagen*, 44 F.4th 99, 108

(2d Cir. 2022) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "This Court will defer to the jury's assessment of witness credibility, even when those witnesses have testified pursuant to cooperation agreements with the government." *Id.* (internal quotation marks and alteration omitted).

**A**

Polk first argues that the government did not present enough evidence to prove that he was part of a conspiracy to distribute significant sums of crack cocaine and marijuana. Relying on the so-called "buyer-seller" exception, he argues that—while he was in a buyer-seller relationship with one of the alleged conspirators—the evidence did not show that he joined with the conspirators in a conspiracy to distribute their drugs or that they had joined with him in a conspiracy to sell his own. *See, e.g.*, *United States v. Dove*, 884 F.3d 138, 151 (2d Cir. 2018). Polk submits that he and Williams could not have been part of a drug conspiracy because they had independent sources of drugs, did not share profits, did not coordinate specific drug sales with each other, did not cook cocaine into crack together, and did not know where the other stored his drugs. We disagree. We have explained that the buyer-seller exception is "narrow" and "stands only for the proposition that 'the mere purchase and sale of drugs does not, without

more, amount to a conspiracy to distribute narcotics.'" *Id.* (quoting *United States v. Brock*, 789 F.3d 60, 63 (2d Cir. 2015)). Here, the evidence suggested that Polk took actions beyond mere purchases, including efforts to preserve the group's exclusive territory in which to sell drugs. In support of these efforts, Polk and other members of the group shared guns and used those guns to keep rival drug sellers out of their territory. Given this evidence, "a rational jury could find beyond a reasonable doubt that [Polk] ha[d] agreed to join and participate in the conspiracy." *United States v. Hawkins*, 547 F.3d 66, 74 (2d Cir. 2008).

Polk also challenges the sufficiency of the evidence as to the amount of crack for which he is responsible. We conclude that the evidence was sufficient to support findings that the amount of crack sold by other members of the group exceeded 280 grams and that such transactions were "reasonably foreseeable" to Polk. *United States v. Pauling*, 924 F.3d 649, 657 (2d Cir. 2019).

The jury therefore had sufficient evidence to find on Counts One and Three that Polk was guilty of participating in a conspiracy to distribute drugs.

**B**

The jury also had sufficient evidence to conclude that Polk was guilty of possessing ammunition while a felon. The parties stipulated that Polk had been

9

previously convicted of a felony, and Polk does not argue that this evidence was insufficient to show that he was aware of his status as a felon. *See Rehaif v. United States*, 139 S. Ct. 2191, 2194 (2019) ("To convict a defendant, the Government … must show that the defendant knew he possessed a firearm and also that he knew he had the relevant status when he possessed it."). He contests only whether the government proved that he possessed ammunition.

Williams testified that on July 25, 2015, he instructed Polk to cock a gun to put a bullet into its chamber after the weapon had jammed, then watched Polk fire the weapon. Law enforcement recovered ammunition casings from the scene, and the jury saw surveillance video footage of the shooting as well as photographs showing where the ammunition had been recovered. This evidence was sufficient for the jury to conclude that Polk possessed ammunition. Polk argues that the government's expert witness testified that the casings were inconsistent with Polk's weapon, as described by Williams. But the expert witness testified only that the casings came from a gun with a hemispherical firing pin and that he could not conclude what type of gun had released the casing. A reasonable trier of fact could have concluded beyond a reasonable doubt that Polk possessed ammunition.

## C

In addition, the district court did not abuse its discretion in denying Polk's motion for a new trial. Polk made the motion after it was revealed that a cooperating witness in a separate trial identified Williams, the government's key witness, as the culprit in a different murder. Polk's argument is that because the accusation—if true—undermines Williams's credibility as a witness, Polk is entitled to a new trial.

We disagree. As the district court noted, "it is not as though the Government provided the jury with an immaculate image of Williams—nearly his entire direct examination is riddled with references to thorough details of his involvement with the conspiracy and admissions of drug use and violent crimes." J. App'x 267. Under these circumstances, "the jury had a fair opportunity to evaluate the witness' credibility." *United States v. Gambino*, 59 F.3d 353, 366 (2d Cir. 1995). The jury nonetheless found Williams's testimony concerning Polk persuasive. Moreover, Williams's testimony about Polk's criminal conduct was corroborated by several pieces of evidence, including surveillance video of Polk committing the shootings, audio recordings, DNA and ballistics evidence, drugs found in Polk's bedroom during a police search, and the loaded gun recovered from Polk's car.

11

In addition, the district court reasonably did not treat the accusation of the cooperating witness as dispositive. The cooperating witness in the separate case was in jail when Williams allegedly killed Jones and was merely reporting what he had heard from others. When Williams was asked about the Jones murder, he told law enforcement that he was not responsible. While this denial does not disprove that Williams killed Jones, the cooperating witness's accusation alone is not enough to disturb a jury verdict otherwise supported by ample evidence. The district court did not abuse its discretion in declining to order a new trial.

*     *     *

We have considered Polk's remaining arguments, which we conclude are without merit. For the foregoing reasons, we affirm the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court