23-7620-cr
*United States v. Kumar*

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

<u>**SUMMARY ORDER**</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of The United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 20th day of December, two thousand twenty-four.

PRESENT:
        DENNY CHIN,
        BETH ROBINSON,
        ALISON J. NATHAN,
                *Circuit Judges.*

———————————————————————

UNITED STATES OF AMERICA,

      *Appellee,*

        v.                                No. 23-7620-cr

DALIP KUMAR, AKA SEALED DEFENDANT 1,
AKA DALIP VERMANI,

      *Defendant-Appellant.*

———————————————————————

FOR APPELLANT:                MARC FERNICH, Law Office of Marc
                                 Fernich, New York, NY.

FOR APPELLEE:                    T. JOSIAH PERTZ (David R. Felton, Sarah Mortazavi, James Ligtenberg, *on the brief*), Assistant United States Attorneys, *for* Damian Williams, United States Attorney for the Southern District of New York, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Oetken, *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the October 16, 2023 judgment is **AFFIRMED.**

Defendant Dalip Kumar was convicted on two counts of money laundering following a jury trial in the Southern District of New York.  His charges stem from a sting operation in which a confidential informant asked him to launder money derived from the sale of illegal passports.

The applicable section of the money laundering statute, 18 U.S.C. § 1956(a)(3)(B), requires proof that Kumar believed the laundered funds to be derived from "specified unlawful activity."  "Specified unlawful activity" is defined by reference to a list of other criminal statutes.  18 U.S.C. § 1956(c)(7). The specified unlawful activity here was "forgery or false use of passport[s]" in violation of 18 U.S.C. § 1543.  On appeal, Kumar challenges the court's refusal to

give a requested jury instruction, the sufficiency of the evidence, the court's

inclusion of a conscious avoidance charge, and an evidentiary ruling. We

assume the parties' familiarity with the underlying facts, procedural history, and

arguments on appeal, to which we refer only as necessary to explain our decision

to affirm.

## I.    Refusal of Instruction About § 1543

Kumar argues that the court should have instructed the jury as to all of the

elements of § 1543, the charged specified unlawful activity. He analogizes the

"specified unlawful activity" for money laundering purposes to a predicate act

for a RICO offense.

We review a challenge to the district court's refusal to give a requested

instruction without deference and will not reverse a conviction on this basis

"unless the requested instruction was legally correct, represented a theory of

defense with a basis in the record that would lead to acquittal, and the charge

actually given was prejudicial." *United States v. Desinor*, 525 F.3d 193, 198 (2d Cir.

2008).[1]

---

[1] In quotations from caselaw and the parties' briefing, this summary order omits all internal quotation marks, footnotes, and citations, and accepts all alterations, unless otherwise noted.

Kumar's RICO analogy is inapt. In the context of a sting operation like this, there is no underlying unlawful activity. Here, the statute requires only that Kumar *believed* that activity generating the money to be laundered was conduct of the sort criminalized by § 1543—that is, "forgery" or "false use" of passports.

Even if the district court might in some circumstances be required to instruct the jury about some elements of the specified unlawful activity underlying a money laundering charge—a question we need not reach—here Kumar did not articulate before the district court a theory of defense that turned on the specific elements of § 1543, and he cannot show any prejudice.

The confidential informant who sought Kumar's money laundering services told him in connection with the 2019 transaction that the money was "illegal passport money," App'x at 112, reported that he charged $4,000 - $6,000 per passport, *id.* at 110, and said, "He does passport and all that . . . Passport and a person brings a pigeon, okay," *id.* at 111. A Hindi language expert testified that the Hindi word for "pigeon" can also mean "illegal immigrant." Trial Tr. 235:23–36:15, 1:21-cr-655 (S.D.N.Y. May 12, 2023), ECF No. 75. The conversation between the confidential informant and Kumar also touched on the need for

4

passports for people who came as "illegal immigrant[s]" in Georgia. App'x at 113.

On this record, there is no basis to surmise that had the jury been instructed as to all the elements of § 1543 it might have reached a different conclusion about whether Kumar believed the funds were derived from the "forgery" or "false use" of passports. *See United States v. Applins*, 637 F.3d 59, 72 (2d Cir. 2011) (explaining that the defendant bears the burden of showing that he was prejudiced from an error in instruction).

Kumar refines his argument on appeal, suggesting that he could have believed the funds came from forged passports that were not intended be used in the United States, which Kumar contends is required by § 1543. Because Kumar did not present this theory to the district court in the context of his request to charge, we review for plain error. Thus, Kumar must show, among other things, that any claimed error affected his "substantial rights." *United States v. Miller*, 954 F.3d 551, 557–58 (2d Cir. 2020).

Kumar's more specific argument fails for the same reason as his general argument that the court should have instructed the jury as to the elements of the specified unlawful activity. There was no evidence or argument before the trial

court suggesting that the purported illegal passports that generated the proceeds the confidential informant sought to launder were to be used exclusively outside of the United States. Nor does Kumar present any persuasive arguments on appeal showing he was prejudiced by the court's failure to list the specific elements of § 1543.

## II. Sufficiency of the Evidence

Kumar argues that his money laundering convictions required proof that he believed the funds were derived from sales of forged or false passports that were intended for use in the United States and that there was insufficient evidence here of domestic use of the passports.

We review a challenge to the sufficiency of the evidence *de novo*, meaning without deference. *United States v. Dove*, 884 F.3d 138, 150 (2d Cir. 2018). In assessing the sufficiency of the government's evidence, "[W]e must view the evidence in the light most favorable to the government, and construe all permissible inferences in its favor." *United States v. Heinemann*, 801 F.2d 86, 91 (2d Cir. 1986).

We see no basis for disturbing the jury's findings here. Even assuming without deciding that § 1543 requires false use of passports or the intended use

6

of forged passports within the United States, the above evidence is more than sufficient to show that Kumar believed the money he laundered derived from the production of forged passports intended to be used in the United States.

## III. Conscious Avoidance Charge

Kumar argues that there was no factual basis for giving a conscious avoidance instruction. That is, Kumar argues there was no evidence that he took deliberate actions or made active efforts to avoid learning facts suggesting the funds came from the sale of unlawful passports.

"A conscious avoidance instruction may only be given if (1) the defendant asserts the lack of some specific aspect of knowledge required for conviction, and (2) the appropriate factual predicate for the charge exists." *United States v. Svoboda*, 347 F.3d 471, 480 (2d Cir. 2003).

In *United States v. Nektalov*, this Court considered a similar challenge to a conscious avoidance instruction in a money laundering trial arising from a sting operation. 461 F.3d 309, 313–17 (2d Cir. 2006). We explained that, because § 1956(a)(3) requires only a defendant's belief as to the source of the funds rather than actual knowledge, "when a defendant claims as a defense to a violation of 18 U.S.C. § 1956(a)(3) that he did not believe that the property involved in the

7

transaction was the proceeds of an unlawful activity, he has asserted the lack of the specific aspect of knowledge required for conviction of that statute." *Id.* at 315. Because the defendant in *Nektalov* argued at trial that he did not believe the funds to be derived from an illicit source, we held that the first prerequisite for a conscious avoidance charge was met. *Id.* at 316.

We also held that there was a sufficient factual predicate to give the charge in that case. "The factual predicate for a conscious avoidance charge is that the evidence is such that a rational juror may reach the conclusion beyond a reasonable doubt that the defendant was aware of a high probability of the fact in dispute and consciously avoided confirming that fact." *Id.* Because the informant hinted to the defendant in that case that the funds came from drug activity (the underlying "specified unlawful activity" in that case), and the informant said he would transport the diamonds and gold to Colombia, we concluded that a rational jury could find beyond a reasonable doubt that the defendant strongly suspected the funds were the proceeds of narcotics trafficking but avoided asking questions to confirm. *Id.* at 317.

Here, as in *Nektalov*, Kumar argued to the jury in summation that the evidence did not show he was aware that the funds came from the charged illicit

activity and therefore challenged an aspect of the required belief. *See, e.g.*, App'x at 194 ("[T]here's no discussion that that business is illegal."). With respect to the factual predicate, there was no evidence presented that Kumar asked the informant any clarifying questions to learn where the funds originated, even after the informant represented that it came from unlawful passports. Nor did Kumar ask clarifying questions when the informant explained that *all* of the work related to the funds came from illegal activity. A rational jury could conclude beyond a reasonable doubt based on this evidence that Kumar believed the funds to come from the sale of illicit passports but avoided asking clarifying questions to confirm. Kumar was free to, and did, argue to the jury that the evidence supported a lack of belief instead. *Nektalov*, 461 F.3d at 317. The jury simply disagreed.

The district court did not err in giving a conscious avoidance charge.

## IV.    Evidentiary Ruling

Kumar argues that the district court erred in excluding from evidence a government manual on entrapment, which Kumar contends would have been relevant to the jury's assessment of the integrity of the government's investigation. The court concluded that the manual was not relevant as the state

9

of mind of government agents had no bearing on Kumar's entrapment defense, and, in any event, would have confused the jury as to the elements of entrapment.  We agree.

We review evidentiary rulings for an abuse of discretion.  *United States v. McGinn*, 787 F.3d 116, 127 (2d Cir. 2015).  "[W]e will disturb an evidentiary ruling only where the decision to admit or exclude evidence was manifestly erroneous."  *Id.*  "Unless a district court's determination of relevance is arbitrary or irrational, it will not be overturned."  *United States v. Schultz*, 333 F.3d 393, 415 (2d Cir. 2003).

Kumar does not now, nor did he at trial, explain the relevance of the manual to his entrapment defense.  For example, he does not explain whether or how the agents violated the policies set forth in the manual.  Nor does he explain how the manual would relate to the government's alleged inducement of Kumar, or to Kumar's predisposition to commit the charged crimes—the two considerations for an entrapment defense.  *See United States v. Cabrera*, 13 F.4th 140, 146 (2d Cir. 2021).  And, even if the manual had some relevance, the court was well within its discretion in concluding that presenting the jury with evidence of the government's policies on entrapment could have confused the

jury as to the legal elements of the entrapment defense—a defense on which the court instructed the jury. Accordingly, we conclude that the court did not abuse its discretion in excluding the manual.

* * *

We have considered Kumar's remaining arguments and conclude that they are without merit. For the foregoing reasons, the district court's judgment is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court